18694

Ronald C. NUCKLES, Dr. C. J. Hawes, Dr. G. A. Hawes, J. L. McLeod and Hazel S. McLeod, Appellants, v. James E. ALLEN, Paul H. Brown, Dwight C. Lambe, Wilson B. Springs and Arthur B. Vereen, as Members of and Constituting the Myrtle Beach Board of Adjustment, Respondents.

(156 S. E. (2d) 633)

*Messrs. E. Windell McCrackin,* of Myrtle Beach, and *John C. Thompson,* of Conway, *for Appellants,*

*Messrs. Joseph E. Singleton,* of Myrtle Beach, and *Wright, Scott, Blackwell & Powers,* of Florence *for Respondents,*

August 23, 1967.

LEWIS, Justice.

This action involves a controversy between petitioners, property owners, and the respondents, who constitute the Board of Adjustment under the Zoning Ordinance of the City of Myrtle Beach, over the right to construct a motel on certain property owned by petitioners. The property is located in an area of the City of Myrtle Beach which had been so zoned that a motel could not be erected on it unless, in the opinion of the Board of Adjustment, such structure and use would not be detrimental to other property in the section. The Board granted a variance or exception for the use of the property for motel purposes but subsequently rescinded its action before the motel was built. While several questions are argued, the only one which we need consider is whether the Board, having authorized the construction of a motel on the property, could, under the facts of this case, legally rescind its prior authorization. The material facts are not in dispute.

The City of Myrtle Beach has enacted a Zoning Ordinance which provides for a Board of Adjustment consisting of five members. Its powers are, generally, those set forth in Section 47-1009, 1962 Code of Laws, which include the power to hear appeals from actions taken by administrative officials in the enforcement of the ordinance and, within limitations, to grant variances and exceptions to the terms of the ordinance.

The property, with which we are here concerned, is located in an area shown on the city zoning map as the "Highland Section" which is, in general, designated for use as "R-1—Single Family Residences.' However, there are certain lots in the Highland Section designated as "A" lots, upon which the construction of motels "may be allowed * * * if, in the opinion of the Adjustment Board, such structure and use will not be detrimental to other property" in the section. Section 5, Subsection 10, Zoning Ordinance of the City of Myrtle. Beach. Therefore, the Board of Adjustment was specifically granted authority by the terms of the ordinance to permit the construction of motels on "A" lots in the Highland Section upon a determination by it that such structure and use would not be detrimental to other property in the area.

Motel Enterprises owned eight ocean front lots in Block 24 of the Highland Section, six of which were "A" lots and therefore approval of the Board of Adjustment was required before a motel could be located thereon. Some time prior to 1966, Motel Enterprises was granted permission by the Board to construct a motel on the above property, but no building permit was ever issued for such construction or other action taken, insofar as the record shows.

Later, on January 10, 1966, Motel Enterprises agreed to sell the eight lots to the petitioners, J. L. McLeod, Dr. C. J. Hawes, Dr. G. A. Hawes, and Hazel S. McLeod, for the sum of $285,000.00. For convenience we shall hereafter refer to these petitioners as McLeod. The property was being purchased by McLeod for the purpose of erecting a motel thereon. The proposed use of the property was evidenced in the written sales agreement which provided that the sale was made subject to approval by the Myrtle Beach authorities of the use of the property for motel purposes. Following the sales agreement, the City Council of Myrtle Beach was petitioner to rezone the six "A" lots included in the purchase. On April 12, 1966, the City Council, after a hearing, concluded that the question of whether the construction of a motel on

the lots would be permitted was a matter for determination by the Board of Adjustment under the powers specifically granted to the Board under Section 5 of the Zoning Ordinance, referred to above, and accordingly denied the petition to rezone the property.

Thereafter, McLeod prepared a plot plan for a seven story, 94-unit motel to be located on the "A" lots being purchased. These plans were submitted to the Board of Adjustment on April 19, 1966 for approval along with a request to be allowed to construct the motel. McLeod informed the Board of the proposed purchase of the lots subject to and contingent upon approval of the motel construction and his desire to have positive assurance of the right to so use the property before the sale was consummated. In addition, the agent, who handled the matter, testified that the Board was also informed that McLeod might subsequently decide to construct a smaller, 24-unit, motel on two of the lots and might also want to sell some of the lots.

The Board, on April 19, 1966, unanimously approved the construction of the 94-unit motel on the "A" lots being purchased by McLeod, each of the board members so indicating their approval by initialing the 94-unit plot plans. The agent of petitioners testified that the Board also instructed the Building Inspector to issue a building permit, if sought, for a 24-unit motel to be located on two of the lots so long as the smaller unit observed the plot plan as approved for the 94-unit structure. While the then Chairman of the Board did not recall the specific instructions to the Building Inspector as to the issuance of a permit for the 24-unit motel, it was undisputed that the approval of the larger 94-unit structure constituted approval of any smaller unit so long as it conformed to the plot plan approved for the larger, and it was so understood by the Board ,the Building Inspector, and all others concerned.

Following the foregoing approval for the construction of a motel on the "A" lots, and based upon such approval, the purchase of the property for $285,000.00 was consummated on July 10, 1966.

Thereafter, in early February 1967, McLeod entered into a sales agreement with petitioner Ronald C. Nuckles for the purchase by him of two of the "A" lots, with an option to buy a third. This sale was subject to the condition that, if Nuckles was unable to obtain an immediate permit for the building of a motel on the lots, or if an action for injunction was commenced prior to April 1, 1967 to stop construction of a motel, all money paid under the sales agreement would be refunded. No deed has been made to Nuckles, his rights resting solely under the contract of sale.

Nuckles then prepared plans and specifications for a 24-unit motel to be constructed on the two "A" lots which he had contracted to buy from McLeod. These plans met the requirements of the plot plans, previously approved on April 19, 1966 for McLeod by the Board of Adjustment; and a building permit was issued on February 15, 1967, to Nuckles by the Building Inspector for the construction of the 24-unit motel.

Thereafter, on February 17, 1967, Nuckles was notified that the permit previously issued to him two days before, on February 15th, had been cancelled or suspended on the ground that the Board of Adjustment must give prior approval to each motel plan submitted. The Board of Adjustment, in which there had apparently been some change in membership since April 19, 1966, met on the afternoon of February 20, 1967 and, by a vote of four to one, revoked the permit issued to Nuckles and also rescinded the variance or exception granted to McLeod on April 19, 1966 to build a motel on the property.

This action was then brought by the petitioners, seeking to have the foregoing action taken by the Board of Adjustment on February 20, 1967 declared null and void and for an order restraining the Myrtle Beach authorities from interfering with the construction of the motel by Nuckles. After a hearing, at which testimony was taken, the lower court entered an order upholding the final action taken by

the Board of Adjustment and denying the relief sought by petitioners, from which they have prosecuted this appeal.

We first deal with the legality of the action of the Board of Adjustment in rescinding the variance or exception granted by it to McLeod on April 19, 1966 to use the property for motel purposes.

The authority of the Board of Adjustment to grant a variance or exception as to the "A" lots in question, so as to permit a motel to be constructed and operated thereon, cannot be soundly questioned. For, as previously pointed out, such authority was specifically granted by the Zoning Ordinance if in the opinion of the Board, such structure and use would not be detrimental to other property in the area.

While the proceedings incident to the granting of the variance or exception to McLeod on April 19, 1966 are not shown in this record, it will be presumed that such action was based upon a finding that the use of the lots in question will not be detrimental to other property in the section. There is no showing to the contrary. *Welling v. Clinton-Newberry Natural Gas Authority,* 221 S. C. 417, 71 S. E. (2d) 7; *Atlantic Coast Line R. Co. v. Public Service Commission,* 226 S. C. 136, 84 S. E. (2d) 132; 2 Am. Jur. (2d), Administrative Law, Section 750.

We think, under the present record, that the granting of the variance or exception to McLeod under date of April 19, 1966, so as to permit the use of the property for motel purposes, constituted a valid exercise of the authority conferred on the board of Adjustment.

The record shows that the purchase by McLeod from Motel Enterprises was based solely upon the use of the property for motel purposes and the approval of such use by the Board of Adjustment. It is inferable that the large purchase price was influenced by the intended use. The approval of the Board was accordingly sought before the sale was consummated and a full disclosure made of the foregoing facts. With the facts before them, the Board granted the variance or ex-

ception requested, subject to compliance with the basic plot plans submitted; and, relying thereon, McLeod and his associates, in good faith, purchased the eight lots for the sum of $285,000.00 for the sole purpose of placing them to the use for which the approval of the Board was granted.

When McLeod, in good faith, purchased the property solely in reliance upon the variance or exception lawfully granted by the Board, he acquired a vested property right therein of which he cannot be deprived without cause or in the absence of public necessity. *Willis v. Town of Woodruff*, 200 S. C. 266, 20 S. E. (2d) 699; *Pendleton v. City of Columbia*, 209 S. C. 394, 40 S. E. (2d) 499.

The Board permitted the purchase of the property to go forward in reliance upon its approval of the use for which it was being purchased and, insofar as the record shows, without cause or public necessity, revoked the approval previously given after the sale had been consummated. Under such circumstances, the Board was without authority to rescind the variance or exception previously granted.

The remaining question concerns the revocation of the building permit issued to petitioner Nuckles. As previously shown, he had entered into a contract to purchase two of the "A" lots in question for the purpose of erecting and operating a 24-unit motel thereon. His purchase is contingent upon the right to so use the property and he applied for a permit to build a motel in accordance with plans filed with his application. Since the plans conformed to the purposes for which the variance had been previously granted and were in accordance with the plot plans previously approved by the Board, the Building Inspector issued a building permit to Nuckles. Shortly thereafter and before Nuckles had expended money in reliance thereon, the Board revoked the permit.

The fact that Nuckles had not expended money or entered into contracts in reliance upon the permit issued is not determinative of his rights to construct and operate a motel on the lots being purchased by him.

Since he holds a valid contract for the purchase of the property, he stands in the position of a successor in title to McLeod from whom he is purchasing, insofar as the issue here is concerned.

Therefore, since McLeod held a vested property right to use the property for motel purposes by virtue of the variance granted by the Board, such inured, under the present facts, to the benefit of the land and was available to Nuckles, a subsequent purchaser. 101 C. J. S., Zoning, § 242; 58 Am. Jur., Zoning, Section 215.

And the failure of the original owners to avail themselves of the right granted under the variance, by putting the property to the permitted use, did not make such right unavailable to the subsequent purchaser. *Mastrati v. Strauss*, 75 R. I. 417, 67 A. (2d) 29. The conditions affecting the use of the property were the same at the time the building permit was granted to Nuckles as they were when the variance was granted by the Board to the original owners. Certainly no just cause or public necessity is shown to justify the action of the Board in rescinding the variance granted to the original owners or revoking the building permit issued to Nuckles, a subsequent purchaser.

The application of Nuckles for a permit to build a motel on the property complied with all conditions of the variance granted and with all other applicable structural requirements of the zoning laws. Under such circumstances the Building Inspector properly issued the building permit to Nuckles and the Board of Adjustment was without authority to revoke it.

The judgment of the lower court is accordingly reversed and the cause remanded for entry of judgment in accordance with this decision.

Reversed and remanded.

Moss, C. J., and BUSSEY, BRAILSFORD and LITTLEJOHN, JJ., concur.