SOPHIE E. ADAMS *vs.* BOARD OF APPEALS OF CONCORD
& others
(and a companion case).

Middlesex.   January 8, 1970. — February 3, 1970.

Present: CUTTER, KIRK, SPIEGEL, & REARDON, JJ.

*Zoning,* "Garden apartments," Dimensional requirements, Exception.
*Subdivision Control.*

Under a town's zoning by-law permitting garden apartments in a resi-
dential district upon approval by the board of appeals and providing
that the garden apartments "need have only such frontage on . . .
ways as may be approved by the" board, its approval of a certain
garden apartments project having adequate area made the frontage
thereof legal although it was less than was otherwise required in that
district; and also established the frontage of the project as the frontage
"required by" the zoning by-law for the purposes of the definition of
"Subdivision" in G. L. c. 41, § 81L, as amended through St. 1965,
c. 61.   [711–712]
Provisions of the zoning by-law of a town permitting garden apartments
in all residence districts of a particular class upon approval by the
board of appeals did not lack compliance with G. L. c. 40A, § 4, as
amended, although such permission was not accorded in residence dis-
tricts of another class requiring larger lot areas.   [712]

TWO BILLS IN EQUITY filed in the Superior Court on
September 25, 1967, and January 2, 1968, respectively.

The suits were heard by *Bennett,* J.

*Leonard E. Rae* for the plaintiff.

*John J. Sheehan,* Town Counsel, for the Board of Appeals
of Concord.

CUTTER, J.   These bills in equity (G. L. c. 40A, § 21, as
amended) arise from decisions (dated September 11, 1967,
and December 15, 1967) of the Concord board of appeals,
granting permission to Guy P. DiGiovanni, individually and
as trustee (the owner), to build five "garden apartment"
buildings on a lot (the locus) containing a total of 234,670
square feet of land.   Of this area, 196,590 square feet are

in a Residence District C and 38,080 square feet are in an Industrial District. Mrs. Adams, who owns land adjacent to the locus, seeks to have the board's decisions annulled. The cases are before us on her appeals from final decrees (1) declaring § 4 (a) 8 (as amended) of the Concord zoning by-law and the board's action under it to be valid, and (2) dismissing the bills. The cases were heard on a statement of agreed facts and certain stipulations made in open court. The trial judge made careful, concise findings and rulings.

The town's planning board examined the site plans for proposed development of the locus and approved them, both as originally filed and as amended. A plan filed by the owner on November 21, 1966, was indorsed in behalf of the planning board, "Approval under the Subdivision Control Law not required." Each application to the board of appeals for permission to build the garden apartments was separately approved by the planning board (by letters dated January 31, 1966, and November 22, 1967). Restrictive provisions recommended by the planning board were incorporated in the decisions of the board of appeals approving the projects.

Section 6 (as amended) of the zoning by-law provides in part: "(f) In Residence Districts C there shall be provided for each dwelling a lot containing at least 10,000 square feet and having a frontage of at least 80 feet on a public or private way. . . . (h) Lot, as required in this By-law, shall be an area of land in one ownership with definite boundaries ascertainable from a recorded deed or recorded plan. . . . (1) The foregoing requirements shall be in addition to any requirements now existing in said districts." As the trial judge indicated, § 6, standing alone, would forbid the proposed garden apartments because each apartment does not have eighty feet frontage on a public way and possibly for other reasons. The board of appeals, however, also was entitled to rely upon § 4 (a) 8 of the by-law which reads (as amended by the insertion of the final sentence in 1968): "Section 4. *Single Residence Districts* . . . (a) *Use*: Except as otherwise provided herein no building or premises

shall be erected, altered or used except for one or more of the following uses: . . . 8. Limited dwelling structures or 'garden apartments,' provided that, following submission of a copy of the site plans with a request for the opinion of the [p]lanning [b]oard on the technical quality of the site plans and its desirability from the stand-point of the long range plan of the [t]own, the [b]oard of [a]ppeals, after notice and a public hearing, shall find and rule that such structures will not be injurious or detrimental to the neighborhood; and subject further to the following conditions, that such structures shall not exceed 2½ stories or be more than 30 feet in height, that no living quarters shall be located below the first floor or above the second floor; and there be a total of not less than 3500 square feet of lot area per dwelling unit, that no building be erected within 15 feet of any property or street line, and that no building include more than 8 dwelling units; and subject further to such conditions respecting site, plans, building design, and other restrictions as the [b]oard of [a]ppeals may prescribe in the interest of the [t]own; provided that such garden apartment structures shall be permitted only in Residence C and Business Districts. Limited dwelling structures or garden apartments need have only such frontage on public or private ways as may be approved by the [b]oard of [a]ppeals." The purpose of the amendment by the last sentence was obviously to afford greater flexibility in planning garden apartments, as is shown by a report of the planning board to the 1968 town meeting which is before us.

The amended § 4 (a) 8 supports the action of the board of appeals. There was ample area (over 196,500 square feet) in the Residence District C part of the locus to permit the garden apartments to be built. These required only 140,000 square feet. We thus need not decide whether this minimum area must be found wholly within Residence District C. Although the locus has frontage of only about 160 feet (in the aggregate) on two existing public ways, the approval of the amended project by the board of appeals satisfies the requirements of the last sentence of the amended section.

That approval, taken with the final sentence of the amended section (as the trial judge correctly ruled), also effected exclusion of the locus from the requirements of the Subdivision Control Law, if that, indeed, is applicable at all in view of the definitions set forth below. See G. L. c. 41, § 81L (as amended through St. 1965, c. 61), in which "Lot" is defined as "an area of land in one ownership, with definite boundaries . . . available for . . . one or more buildings," and the term "Subdivision" does not include "the division of a tract . . . into two or more lots" when every lot within the tract has frontage on a public way "of at least such distance as is then required by [t]he zoning . . . by-law." Since the locus is an area in one ownership and its proposed use has been approved in detail by the board of appeals, the required frontage under both § 81L and the amended § 4 (a) 8, is only the frontage required by the board of appeals. See *Haynes* v. *Grasso*, 353 Mass. 731, 733–734.

There is no merit to Mrs. Adams's contention that the provisions of § 4 (a) 8 of the by-law do not comply with G. L. c. 40A, § 4 (as amended through St. 1966, c. 199). The by-law provisions apply to all Residence Districts C in the town and thus are "applicable to all of the districts of a particular class . . . set forth in such . . . by-law." The town reasonably may determine that considerations affecting regulation of Residence Districts C are different from those affecting residence districts requiring larger lot areas.

*Final decrees affirmed.*