In Re: Appeal of Newtown Racquetball Associates From the Newtown Township Zoning Hearing Board. Newtown Racquetball Associates, Appellant.

In Re: Appeal by Newtown Racquetball Associates of Preliminary Approval by the Board of Supervisors of Newtown Township of the Preliminary Plan of Newtown Park and Swimming Club, Inc. to the Newtown Township Zoning Hearing Board. Newtown Racquetball Associates, Appellant.

Argued June 7, 1982, before President Judge CRUMLISH, JR. and Judges WILLIAMS, JR. and DOYLE, sitting as a panel of three.

*Martin J. King, Crodes, King & Associates, P.C.,* for appellant.

*E. Dillwyn Darlington,* for appellees, Newtown Park & Swimming Club, Inc. and First National Bank & Trust Company of Newtown.

OPINION BY JUDGE WILLIAMS, JR., August 9, 1983:
Newtown Racquetball Associates (Racquetball) has filed two appeals from two zoning orders of the Court of Common Pleas of Bucks County. By the first order, the trial court affirmed a decision of the Newtown Township Zoning Hearing Board (Zoning Board) granting a special exception and three variances to the First National Bank and Trust Company of Newtown (Bank). The trial court's second order upheld the preliminary approval of a preliminary land

development plan that had been submitted by the Newtown Park and Swimming Club, Inc. (Swimming Club).

In the first of Racquetball's appeals, No. 1602 C.D. 1981, the appellant challenges the grant of the variances to the Bank, asserting, *inter alia,* that the Bank had not met its burden of proving an unnecessary hardship. By its second appeal, No. 1603 C.D. 1981, Racquetball seeks to invalidate the approval of the Swimming Club's preliminary land development plan. We consolidated the two appeals.

## BACKGROUND

In 1966, the Bank purchased a parcel of land on Newtown-Yardley Road in Newtown Township, Bucks County. The parcel had a frontage of 150 feet, a depth of 267.33 feet, and an area of 40,099 square feet. The Bank subsequently used the site for the erection of a branch office, which was opened for business in May of 1967. At the time the Bank purchased the site, and at the time the branch office was opened, the zoning for the property was commercial. However, sometime between the opening of the branch office and the year 1976, the zoning was changed to "R-2 Residential." As a result, the Bank's branch office became a nonconforming use.

In 1976, the Bank sought to expand the branch office "to enable it to remain a full service bank." Accordingly, the Bank applied to the Zoning Board for a special exception to allow the expansion of a nonconforming use. Also requested were three variances from the restrictions of the zoning ordinance: (a) to permit expansion of the nonconforming use by 49% instead of the 25% allowed by the ordinance; (b) to permit a front yard set-back of only 24 feet, whereas the ordinance required at least 75 feet; and (c) to permit lot coverage of 45.7% rather than the 15% allowed

by the ordinance.[1] The Bank's application met no opposition; and, in November 1976, the Zoning Board granted the special exception and the three variances. However, the Zoning Board imposed certain conditions on the grant. The two primary conditions concerned the matter of access to the branch office from the public roadway, and the matter of storm water drainage along the roadway in front of the office. The Bank, apparently because it was dissatisfied with the traffic-flow plan devised by Township authorities, never did avail itself of the special exception and variances granted in 1976.

The Swimming Club owns a 40-acre tract of land that abuts the Bank's branch office site on three sides. In 1977, one Tony Boccardo, who was then the sole owner of the Club, applied to the Newtown Township Zoning Hearing Board for a special exception to create an expanded recreation complex on the 40-acre tract. The Club already had existing swimming facilities. Its expansion plans included indoor and outdoor tennis courts, racquetball courts, a golf course, and a golf driving-range. The exit for the recreation complex was to be about 200 feet west of the Bank's property on Newtown-Yardley Road.

On July 6, 1977, the Zoning Board granted the special exception that had been sought for the Swimming Club. That grant, however, was made subject to certain conditions. One of the conditions was that, prior to opening the Club's facilities for use, the Club had to install certain acceleration and deceleration lanes for traffic; and, the lanes had to meet the approval of the

---

[1] Given the Bank's statement that the purpose of its zoning application was to enable the branch office to "remain" a "full service" operation, some curiosity is in order about the Bank's use of the word "remain." The word "remain" would seem to indicate that the branch office was *already* a "full service" bank and, hence, had no need for the massive variances sought.

Township engineer. Under Section 1210 of the Township's zoning ordinance, a special exception expired if the applicant failed to obtain a permit within six months of the date the exception was granted.[2] The Swimming Club did not obtain a permit within that mandated period. Indeed, the Club took no steps to effectuate its special exception until February of 1978. About February 14, 1978, the Club submitted to the Township Board of Supervisors a preliminary land development plan for the proposed recreation complex.

In conjunction with the development plan it submitted in February 1978, the Swimming Club was attempting to secure an easement in a parcel of land on the other side of Newtown-Yardley Road, across from the Club's property. The purpose of the easement was to permit the widening of the road to provide one of the traffic lanes that had been made a condition of the Club's special exception. Efforts to obtain that easement were thwarted, however, when the would-be-servient property was purchased by Racquetball, sometime in 1978.

Still seeking to bring about their respective expansion plans, the Bank and the Swimming Club, sometime by early 1979, entered into an agreement for the creation of a joint driveway. That agreement included the following provisions: (1) the Bank would deed part of the rear of its property to the Club; (2) the Club would deed to the Bank a strip of ground along the east side of the Bank's property; (3) the Club would grant to the Bank an easement for the purpose of constructing an entrance and exitway to be used by the Bank and the Club; and (4) the Bank would grant the Club an easement to use part of the Bank's property fronting on Newtown-Yardley Road

---

[2] A variance is subject to the same time limitation.

as an acceleration lane for Club-related traffic. Ostensibly, the implementation of that agreement would reduce by one the number of driveways along that section of Newtown-Yardley Road.

Armed with the driveway agreement with the Swimming Club, the Bank re-applied to the Zoning Board for a special exception and three variances. This application sought what appeared to be almost the same variances that the Bank had requested, and was granted, in 1976. But there was at least one difference: In the second application the Bank sought permission for lot coverage of 49%; whereas the 1976 application and grant were for lot coverage of 45.7%. The new variance application was based on the same reason that the Bank had advanced for its first application: that the variances were needed to allow the branch office to "remain" a "full service" operation.

On May 3, 1979, the Zoning Board conducted a public hearing regarding the Bank's new application as affected by the joint-driveway agreement with the Swimming Club. At that hearing, Racquetball was present as a protestant. The Swimming Club also appeared, as an intervenor. By a decision dated June 15, 1979, the Zoning Board granted the Bank's new application, subject to essentially the same conditions that had been imposed in 1976. From that decision Racquetball appealed to the Court of Common Pleas of Bucks County.

Following the favorable decision by the Zoning Board on the Bank's second application, the Swimming Club submitted a revised preliminary development plan to the Township Board of Supervisors. On August 4, 1979, after a public hearing on the matter, the Supervisors approved the revised plan. From that decision Racquetball appealed, first, to the Zoning Board, which affirmed the Supervisors. We should point out that, at no time prior to the Supervisors'

approval of the plan or prior to the affirmance by the Zoning Board, had the Swimming Club's preliminary plan been submitted to the Bucks County Planning Commission. When the Zoning Board affirmed the Supervisors, Racquetball appealed that decision to the Court of Common Pleas.

The Court of Common Pleas consolidated Racquetball's two appeals. Then, during the pendency of proceedings before the trial court, the Bank withdrew from further active participation in the litigation. Consequently, the court allowed the Swimming Club to proceed on behalf of the Bank as well as for itself. By orders dated May 26, 1981, the trial court affirmed both decisions of the Zoning Board, without having taken additional evidence as to either case. From the trial court's orders, Racquetball filed the two appeals now before us.

## No. 1602 C.D. 1981

The subject of this appeal is the June 1979 decision of the Zoning Board granting the Bank's second application for variances. As previously noted, the appellant, Racquetball, asserts that the Bank failed to prove an unnecessary hardship as to warrant the granting of the variances. Curiously enough, the trial court itself concluded, and correctly so, that the Bank had not proved an unnecessary hardship in the proceedings on its second application. In the view of the trial judge, the only hardship the Bank had shown was, at the most, economic; and such did not rise to the level of an unnecessary or legal hardship. Yet, the trial court felt constrained to uphold the variances granted in 1979, because of the Zoning Board's decision on the Bank's first application. In other words, the trial court concluded that the grant of variances in *November 1976* was *res judicata* on the issue of unnecessary hardship and, thus, precluded a contrary

determination as to the Bank's second application. In that reasoning, the court relied on our decision in *Grace Building Co. v. Hatfield Township,* 16 Pa. Commonwealth Ct. 530, 329 A.2d 925 (1974). That reliance was misplaced.

In the *Grace Building Co.* case, the property in question was subject to an undeniable dimensional hardship, for which the zoning board initially granted certain variances. However, when the owner failed to obtain a building permit within the prescribed time, it became necessary for the owner to re-apply for the variances. The zoning board denied the second application, because the owner had not tried to purchase an adjacent parcel which would have solved the dimensional problems. We reversed that decision, because there was nothing to show that the *already-demonstrated* legal hardship did not continue to exist; and because the applicant had no duty, under law, to try to buy additional land.

In the instant case, the only assertion of hardship ever advanced by the Bank, *in either of its variance applications,* was an assertion that it needed the three variances to "remain" a "full service" bank. As noted, that assertion was no more than a claim of economic hardship. Such does not constitute an unnecessary or legal hardship as to warrant the granting of a variance. *E.g., Pierorazio Appeal,* 53 Pa. Commonwealth Ct. 593, 419 A.2d 221 (1980). Consequently, the first grant of variances to the Bank did not rest on a demonstrated legal hardship; and thus, that grant amounted to a legally erroneous decision. That circumstance makes this case materially different from *Grace.*

Since the Bank's first variances were improperly granted, it must follow that the first grant could not compel or validate the second grant. *See Lakeside Youth Service v. Zoning Hearing Board of Upper*

*Moreland Township,* 51 Pa. Commonwealth Ct. 485, 414 A.2d 1115 (1980). Where variances have been improperly or illegally granted, the zoning board has not only the right but the duty to revoke them. *Ventresca v. Exley,* 358 Pa. 98, 102, 56 A.2d 210, 212 (1948). Hence, it becomes obvious that the initial impropriety cannot serve to validate its repetition.[3]

To summarize the instant case, we conclude that the Bank was granted the variances in issue without ever having proved a legal hardship. Because of that error by the Zoning Board, we must reverse its decision.

### No. 1603 C.D. 1981

As noted, Racquetball's second appeal challenges the approval, by the Township Supervisors, of the Swimming Club's preliminary land development plan. The appellant advances several grounds as to why the Zoning Board erred in affirming the Supervisors' decision; however, we need not address all of the arguments raised. One contention is that, because the Swimming Club did not obtain a permit within six months after its special exception was granted, the special exception expired by force of Section 1210 of the Township's zoning ordinance. From that contention, the appellant argues further that, because the Club's special exception had expired prior to the decision of the Supervisors, they were precluded from approving the Club's plan.

The Zoning Board, and the trial court as well, answered the foregoing argument by concluding that the six-month limitation mandated by the zoning ordinance did not begin to run until the grantee of the

---

[3] The Pennsylvania Supreme Court has held that, allowing only for exceptional circumstances, each zoning application and case must be dealt with anew and apart. *Heller v. Zoning Board of Adjustment,* 404 Pa. 8, 11, 171 A.2d 44, 46 (1961).

special exception had complied with the conditions attached to it. We must reject the answer offered by the authorities below. Otherwise, the grantee of a special exception could circumvent the mandated time limitation by simply delaying his compliance with the conditions. Accordingly, we agree with Racquetball's assertion that the Swimming Club no longer had a viable special exception by the time the development plan was approved by, or even submitted to, the Township Supervisors. However, we need not consider, in this case, how that particular infirmity relates to the power of the Supervisors to render their judgment as to the acceptability of the plan itself. In our view, the approval here in question suffers from a more obvious defect.

It is undisputed that the Swimming Club's land development plan was never submitted to the Bucks County Planning Commission. That fact, the appellant argues, invalidated the Supervisors' approval of the plan. Sections 602 and 604 of the Township's Subdivision and Land Development Ordinance, as we read those provisions, require that copies of land development plans be submitted to the Bucks County Planning Commission for review and comment. Section 604 of that ordinance also provides that no plan shall be reviewed or considered by the Township authorities until all procedures, plan information, and requirements specified in the ordinance have been complied with.

We should also point out that, pursuant to Section 502 of the Pennsylvania Municipalities Planning Code (MPC),[4] a township with its own subdivision and land development ordinance must forward to the *county* planning agency all applications for land development. Section 502 of the MPC states, moreover, that

---

[4] Act of July 31, 1968, P.L. 805, *as amended*, 53 P.S. §10502.

such a municipality "shall not approve such applications until the county report is received or until the expiration of forty-five days from the date the application was forwarded to the county."

Since, in the instant case, the Swimming Club's development plan was never sent to the Bucks County Planning Commission, the plan was not legally ripe for approval by the Township Supervisors. Hence, we must hold that the Zoning Board erred in affirming the Superviors' approval of the plan here involved.

### CONCLUSION

For the reasons set forth in this opinion, the two appealed-from orders of the trial court must be reversed.

### ORDER

AND Now, the 9th day of August, 1983, the order of the Court of Common Pleas of Bucks County at No. 79-8001-09-5, and the order of the said Court of Common Pleas at No. 80-1007-09-5, are hereby reversed.

President Judge CRUMLISH, JR. concurs in the result only.