FRANK H. HOGAN & another[1] vs. ROBERT P. HAYES & others.[2]

Norfolk. November 8, 1984. — February 22, 1985.

Present: GRANT, KAPLAN, & KASS, JJ.

*Zoning,* Variance, Building permit, Building inspector, Appeal to board of appeals. *Permit.*

Although, under G. L. c. 40A, §§ 7 & 8, parties claiming to be aggrieved by a municipal building inspector's issuance of a permit were required to make a protest to the building inspector and obtain his written response thereto before seeking administrative review by the board of appeals, omission of this procedural step was not fatal to their action for judicial review of the board of appeals' decision upholding the permit, where opposing parties did not raise the issue. [402-403]

Where a zoning variance with respect to a parcel of land was granted in 1974 and was exercised in 1975 by the division of the parcel into two lots, each of which would be in violation of the city's zoning ordinance were it not for the variance, and by the conveyance of one of the lots with the buildings thereon, the issuance in 1983 of a building permit for a dwelling on the unimproved lot presented no issue as to any retroactive effect of provisions in G. L. c. 40A, § 10, which took effect in the city on June 30, 1978, that a variance shall lapse if it is not exercised within one year after the date it is granted. [403-405]

Where the record in an action for judicial review of the issuance of a building permit did not reveal the building inspector's basis for concluding under G. L. c. 41, § 81Y, that municipal subdivision requirements were satisfied, the judgment upholding the permit was reversed, but with leave to the permit holders to supplement their pleadings and proof after taking any steps they deemed necessary to fulfil § 81Y. [405]

---

[1] Katherine A. Hogan, his wife.

[2] Mary A. Hayes, his wife, the inspector of buildings of Quincy, the board of appeals of Quincy, and the planning board of Quincy. As indicated below, this action was consolidated with another brought by the same plaintiffs and naming as defendant only the board of appeals of Quincy.

CIVIL ACTION commenced in the Superior Court Department on January 31, 1983.

The case was heard by *George N. Hurd, Jr., J.,* on a motion for summary judgment.

*Robert L. Marzelli* for the plaintiffs.

*Robert W. Langlois* for the defendants.

KAPLAN, J.  The plaintiffs Frank and Katherine Hogan own a lot on a private way in Quincy, called Patrick Road, and the two-story house and detached garage thereon. The lot is rectangular, has an area of 5,000 square feet, and a width of 50 feet fronting on the way. The defendants Robert and Mary Hayes own a contiguous lot, similar in shape and area, and with a similar 50 foot frontage on the way. Their lot is vacant. The object of the present (consolidated) action was to prevent the Hayeses from building on their lot. On cross motions for summary judgment, aided by a statement of agreed facts, a judge of the Superior Court gave judgment for all the defendants, who included, aside from Mr. and Mrs. Hayes, the Quincy building inspector, the board of appeals, and the planning board. On the main issue, we, too, support the defendants, but there is a complication that stands in the way of an affirmance, as will appear.

We abbreviate the facts as far as feasible. By 1949, Margaret Stanton and her husband were owners by the entirety of both lots,[3] a combined area of 10,000 square feet with the house and garage thereon, and a frontage of 100 feet. In April, 1974, after the death of her husband, Mrs. Stanton applied to the board of appeals for a variance to allow her to divide her ownership so that she could sell the lot with the existing house and garage, and build a small residence on the other lot. There was need for a variance because the zoning provisions then (and still) applicable in this residential district specified a minimum lot size of 7,650 square feet, minimum lot frontage and width each of 85 feet, and minimum side yard depths of

---

[3] The lots were originally laid out as part of a plan recorded in 1902. By the late 1940's, the two lots came to be separately owned. The Stantons bought one of the lots in 1948 and the other in 1949.

thirteen feet.[4] On a determination that "a literal enforcement of the provisions of the Zoning Ordinance would involve substantial hardship to [Mrs. Stanton]," and so forth, the board of appeals granted a variance "to subdivide the premises . . . and erect a single-family dwelling on the vacant lot created." Mrs. Stanton did not at that time ask the planning board to give or dispense with approval under the Subdivision Control Law. See *Arrigo* v. *Planning Bd. of Franklin,* 12 Mass. App. Ct. 802 (1981).

In 1975 Mrs. Stanton sold the lot with house and garage to the plaintiffs' predecessor in title. The other lot remained vacant at the time. Subsequently, the defendants Robert and Mary Hayes purchased that lot from Mrs. Stanton, and, about that time, on December 14, 1982, they applied to the building inspector for a building permit for a one-story, single family dwelling. The permit issued on January 14, 1983. On April 7, 1983, the planning board gave the defendants an endorsement of "approval not required" under the Subdivision Control Law.

The plaintiffs have attacked in a number of ways. On January 24, 1983, ten days after the issuance of the building permit, they filed a written protest with the building inspector. Failing any response on his part, the plaintiffs, on February 28, 1983, filed an administrative appeal with the board of appeals. That board denied relief on June 24, 1983.[5] As early as January 31, 1983, however, the plaintiffs had instituted an action in the Superior Court against all the defendants named above. Their complaint, as finally amended on May 11, 1983, and amplified by the statement of agreed facts, asserted as a main proposition that the variance had "lapsed," thus destroying the

[4] Without the variance, the division proposed by Mrs. Stanton would have put the built-on lot in manifest violation of the lot area and minimum frontage and width provisions. There would be a violation, also, of the side yard provision because a lot line bounding the vacant lot would run within four feet of the existing house. Mrs. Stanton's plan put the proposed house within ten feet of a lot line.

[5] The board indicated that the "lapse" question, mentioned immediately below, would have to be finally decided by the court in the plaintiffs' action commenced on January 31, 1983.

basis for the building permit. If that contention were to be rejected, then the plaintiffs would assert that the permit was invalid because it was not preceded by satisfaction of the Subdivision Control Law (whether, as we may suppose, by approval of a subdivision or by endorsement of "approval not required"); and, further, that the necessary conditions did not exist for the endorsement given by the planning board. Perhaps to fortify themselves procedurally, the plaintiffs on July 12, 1983, commenced a second action in the Superior Court attacking specifically on the ground of "lapse" the ruling of the board of appeals of June 24, 1983, which had refused to disturb the allowance of the building permit. The two actions were ordered consolidated, and the summary judgment appears to have been intended to dispose of both actions.[6]

1. There is a possible difficulty — not raised by the defendants — which threatens to frustrate the plaintiffs' appeal. According to the case of *Vokes* v. *Avery W. Lovell, Inc.,* 18 Mass. App. Ct. 471, 479 (1984), decided after the decision below, the triggering event for an application for administrative review of the action of the building inspector would be a written response by him to the plaintiffs' protest; but in the present case he has made no such response voluntarily or by compulsion. See G. L. c. 40A, §§ 7 & 8.[7] We think, however, that the plaintiffs can escape this abyss. The defect, although it may be spoken of as "jurisdictional," appears not to be of such significance that a court must take notice of it even if the opposing party fails to press it, cf. Mass.R.Civ.P. 12(h)(3), 365 Mass. 757 (1974) (subject matter defect); rather, like a defect of "personal" jurisdiction, it may be overlooked if not timely objected to, cf. Mass.R.Civ.P. 12(h)(1), 365 Mass.

---

[6] We read the notice of appeal as being addressed to the consolidated action although nominally lodged only in the first action.

[7] As to the administrative route that must be traveled before judicial review is sought, see *Neuhaus* v. *Building Inspector of Marlborough,* 11 Mass. App. Ct. 230, 235 (1981); *McDonald's Corp.* v. *Seekonk,* 12 Mass. App. Ct. 351, 353 (1981); and note *Banquer Realty Co.* v. *Acting Bldg. Commr. of Boston,* 389 Mass. 565, 574-575 (1983).

757 (1974). Accordingly, the plaintiffs' appeal is not destroyed and we consider it.[8]

2. On the main question of the claimed lapse of the rights granted by the variance, the plaintiffs would have to concede that under The Zoning Enabling Act which antedated the present The Zoning Act, G. L. c. 40A (effective in Quincy on June 30, 1978), a variance once validly allowed could continue in force without limit of time although not exercised.[9] Nor was a time limit set on the instant variance, either by the ordinance or by the actual text of the variance as allowed. The plaintiffs contend, however, that the new statute, G. L. c. 40A, § 10, quoted in the margin,[10] does establish a limit of one year, and that this (or possibly the policy expressed by it) applies not only to variances granted after the effective date of the statute, but retroactively to variances granted theretofore. The plaintiffs do not spell out convincingly the extent or detail of this claimed retroactivity, but they assert that the instant variance, unexercised, as they claim, through 1982 and beyond, was extinguished and could not furnish a lawful foundation for the building permit.

The notion that variances more than one year old, and remaining unexercised by the effective date of the new statute, are destroyed wholesale by a retroactive application of § 10, would appear quite drastic, and hardly matches the text of that provision. A milder contention might take the form that § 10 should extend to cancel variances, granted well before the effective date of the new statute, which have not been exercised within a year after that date. Even that proposition might put a great and insupportable strain on the statutory language. (See

---

[8] It may be observed that the building inspector is joined in the present action and is aligned as a defendant.

[9] See, however, the reference below to the possible supersession of an unexercised variance by reason of a severe change of conditions.

[10] Section 10, as amended by St. 1977, c. 829, § 4B, provides: "If the rights authorized by a variance are not exercised within one year of the date of grant of such variance they shall lapse, and may be reestablished only after notice and a new hearing pursuant to this section."

the reading of § 10 in *Knott* v. *Zoning Bd. of Appeals of Natick,* 12 Mass. App. Ct. 1002, 1004 [1981].)

But we need not and should not attempt to rule on the broad issue of retroactivity. We are prepared to say that, so far as § 10 may conceivably bear on the past variance at bar, there was a sufficient exercise of it not later than the time when Mrs. Stanton sold the lot and buildings to the plaintiffs' predecessor in 1975. As indicated (see note 4, *supra*), the predecessor at that point (and, indeed, the plaintiffs today) would be in multiple violation of the zoning ordinance were it not for the variance. So also, after disposing of the plaintiffs' lot in reliance on the variance, Mrs. Stanton retained a lot which, except for the variance, could not have been developed and would have lost value. Even though the variance had not been fully carried out by actually building, we think it was sufficiently (and irrevocably) exercised. Cf. *Dimitrov* v. *Carlson,* 138 N.J. Super. 52, 59 (1975); *Hill Homeowners Assn.* v. *Passaic,* 156 N.J. Super. 505, 512 (1978); *Nuckles* v. *Allen,* 250 S.C. 123, 130 (1967).[11] Moreover, the plaintiffs' position is so intrinsically inequitable that it should not prevail. They take advantage of so much of the variance as is needed to enable them to hold their property lawfully but seek at the same time to escape from its coincident burden upon them. See *Ellen M. Gifford Sheltering Home Corp.* v. *Board of Appeals of Wayland,* 349 Mass. 292, 295 (1965); *Skipjack Cove Marina, Inc.* v. *County Commrs. for Cecil County,* 252 Md. 440, 450-452 (1969). Cf. *Selectmen of Stockbridge* v. *Monument Inn, Inc.,* 14 Mass. App. Ct. 957, 958-959 (1982).

---

[11] We decide that the exercise of rights herein would be sufficient to prevent a lapse of the variance even on the plaintiffs' hypothesized interpretation of § 10. We do not attempt a definition of "exercise" under § 10 in its prospective sense. Cf. *Hunters Brook Realty Corp.* v. *Zoning Bd. of Appeals of Bourne,* 14 Mass. App. Ct. 76 (1982).

Unlike § 10, some zoning provisions have carried definitions of use or exercise. See *Roy* v. *Kurtz,* 357 So.2d 1354, 1356 (La. Ct. App.), writ denied, 359 So.2d 1307 (La. 1978); *230 Tenants Corp.* v. *Board of Standards & Appeals of New York,* 101 A.D. 2d 53, 54 (N.Y. 1984); *In re Appeal of Newton Racquetball Associates,* 76 Pa. Commw. 238, 242 (1983).

In holding that the variance at bar did not lapse but on the contrary has been sufficiently availed of, we do not mean to reflect in any way upon a possibility that an old variance, long unexercised, may lose its force by reason of radically changed conditions at the locus, including changes brought about by revisions of a zoning ordinance or by-law. See *Dimitrov* v. *Carlson, supra*; *Ambrosio* v. *Zoning Bd. of Appeals of Huntington,* 196 Misc. 1005, 1008-1009 (N.Y. Sup. Ct. 1949). No such claim can be made here.

3. Like too many zoning cases, this one is beset by a procedural difficulty, here arising upon the plaintiffs' objection, already adverted to, that the issuance of the building permit was not preceded by satisfaction of subdivision requirements. More particularly, the plaintiffs point to G. L. c. 41, § 81Y, second par. (as appearing in St. 1953, c. 674, § 7), which states that a building inspector may not issue his permit "until first satisfied that the lot . . . is not within a subdivision, or that a way furnishing the access to such lot as required by the subdivision control law is shown on a plan recorded or entitled to be recorded under [§ 81X]," etc. We do not know on what basis the building inspector acted. The planning board's "approval not required" endorsement would be a proper basis, but that came too late for the purpose. The plaintiffs' grievance seems minor at best: although asserting that the planning board's endorsement of "approval not required" was improper, the plaintiffs do not provide any solid support for the assertion. See *Haynes* v. *Grasso,* 353 Mass. 731 (1968); *Adams* v. *Board of Appeals of Concord,* 356 Mass. 709 (1970).

Having lost their point that the variance has lapsed, the plaintiffs may see little profit in persisting with this litigation. Strictly, however, they are entitled to a reversal of the judgment, but with leave to the defendants to supplement their pleadings and proof with respect to compliance with G. L. c. 41, § 81Y (having reapplied so far as they may deem necessary to the building inspector or planning board to attain compliance); the action to proceed further in the Superior Court as occasion may require.

*So ordered.*