Wexler, James H., J.
Plaintiffs, Chris and Marcia Warrington (“the Warringtons”), brought this action pursuant to G.L.c. 40A, §17 against defendants seeking to annul a decision by the Town of Rutland Zoning Board of Appeals ("the Board”) which granted a Cease and Desist Order (“the Order”) against them. Defendant, Clealand B. Blair (“Blair”), petitioned the Board pursuant to G.L.c. 40A, §7 to issue the Order because plaintiffs’ non-conforming use of their property was in violation of the town’s zoning by-laws. Plaintiffs filed for summary judgment pursuant to Mass.R.Civ.P. 56 asserting defendant Blair lacked standing as a “person aggrieved” to petition the Board, and therefore, the Board had no jurisdiction to hear the case. In the alternative, plaintiffs argue that even if standing and jurisdiction were proper, the Order is time-barred pursuant to G.L.c. 40A, §7. Defendants argue that summary judgment is improper because plaintiffs’ jurisdictional challenge is untimely and the limitations period under G.L.c. 40A, §7 is inapplicable. For the following reasons, plaintiffs’ Motion for Summary Judgment is DENIED and summary judgment is GRANTED to the defendants.

BACKGROUND

Plaintiffs, Chris and Marcia Warrington, are the owners of the property located at 344 Main Street, Rutland, Massachusetts, by deed dated November 8, 1993 and recorded at the Worcester Registry of Deeds (Book 15795, Page 342). The property is located in a district zoned residential under the Rutland Zoning By-laws (“By-laws”). As of 1995, the property was improved with a single-family house and a horse paddock, uses consistent with the By-laws.
On June 5, 1995, the Warringtons submitted an Application for Plan Examination and Building Permit to the Town of Rutland. Plaintiffs intended to build a new structure and operate a dance studio out of it as a “home occupation”[4] under the By-laws which restricted residential district uses, inter ailia, to one or two family dwellings, farms,[5] and customary home occupations. A dancing academy or a place of instruction were only permitted in business districts in Rut-land pursuant to section 7 of the By-laws. On June 6, 1995, Rutland Building Inspector, Harry C. Johnson (“Johnson”), issued Building Permit #59 (“the Building Permit”) to the Warringtons to build a one-story bam structure to be used for Home Occupation at the premises. The Building Permit mandated that the building’s construction comply with building, plumbing, electric codes and “zoning for home occupation.”
During the period from June 1995 through September 1995, the building was constructed in accordance with the Building Permit. While under construction, Johnson received complaints from two town residents regarding the proposed use of the building as a dance studio. However, neither Johnson, nor the town’s Board, ever took any action against the Warringtons resulting from these complaints. After completing construction in September 1995, the Warringtons operated a dance studio out of the building. They continued to use the building for this purpose from September 1995 through December 2004 despite being notified on August 7, 1995, by Johnson that such a use was unlawful in the residential district absent a special permit.
On October 12, 2004, defendant Blair wrote to Johnson complaining that plaintiffs were using the property for commercial purposes — a use inconsistent with the By-laws. Blair, a residential and commercial real estate owner in Rutland, requested Johnson order the cessation of all business activities on the Warringtons’ property. Specifically, Blair sought to stop the Warringtons from using the properly as a: dance studio, hotel, fitness center, massage/physical therapy business, and restaurant business. In response, on October 14, 2004, Johnson notified Blair by letter that he would not initiate legal proceedings to stop the Warringtons from using the property for these purposes. However, Johnson did acknowledge that such uses were unlawful under the By-laws, the Warringtons had notice thereof, and that Blair could appeal Johnson’s decision as Building Inspector to the Board.

DISCUSSION

Summary Judgment Standard

Summary judgment shall be granted where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Mass.R.Civ.P. 56(c); Cassesso v. Comm’r of Correction, 390 Mass. 419, 422 (1983). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue, and that the summary judgment record entitles the moving party to judgment as a matter of law. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). The moving party may satify this burden either by submitting affirmative evidence that negates an essential element of the opposing party’s case or by demonstrating that the opposing party has no reasonable expectation of proving an essential element of his case at trial. Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991); Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991).

*39
Jurisdictional Defect Challenge

Any person may request in writing that a building inspector enforce the zoning by-laws and that person is entitled to a written response from the building inspector. See G.L.c. 40A, §7. At this stage, the person need not be aggrieved; however, “(t]o go beyond that stage, if the request for enforcement is rejected, a party must be aggrieved.” Green v. Bd. of Appeals of Provincetown, 404 Mass. 571, 573 (1989); see also Butts v. Zoning Bd. of Appeals of Falmouth, 18 Mass.App.Ct. 249, 253 (1984) (“(O)nly a ‘person aggrieved’ by an order or decision of an administrative official may appeal to the zoning board of appeals”). “Aggrieved person status is no less a jurisdictional condition to maintaining an appeal to a board of appeal under G.L.c. 40A, §8, than it is to maintaining judicial review under §17.” Chongris v. Bd. of Appeals of Andover, 17 Mass.App.Ct. 999, 1000 (1984).
A plaintiff qualifies as a “person aggrieved” by demonstrating some infringement of his or her legal rights and that the injury is more than speculative.[6] Circle Lounge & Grille, Inc. v. Bd. of Appeal of Boston, 324 Mass 427, 430 (1949); Tsagronis v. Bd. of Appeals of Wareham, 415 Mass. 329, 335 (1993). Moreover, the plaintiff must show that the injury flowing from the Board’s action is special and different from the injury the action will cause the community in general. Bell v. Zoning Bd. of Appeals of Gloucester, 429 Mass. 551, 554 (1999); Barvenik v. Aldermen of Newton, 33 Mass.App.Ct. 129, 132 (1992).
Abutters enjoy a rebuttable presumption that they are “persons aggrieved” for purposes of determining standing. However, once a sufficient challenge has been presented, the presumption disappears and standing is “decided on the basis of the evidence with no benefit to the plaintiff from the presumption.” Barvenik, 33 Mass.App.Ct. at 131. Therefore, the plaintiff bears the burden of proof as to standing “although [he or she] is not required to prove by a preponderance of the evidence that his or her claims of particularized or special injury are true.” Butler v. City of Waltham, 63 Mass.App.Ct. 435, 441 (2005).
Jurisdictional defects are waived in zoning cases if not timely raised. See Hogan v. Hayes, 19 Mass.App.Ct. 399, 402-03 (1985) (holding, under 40A, §§7 and 8, that “[t]he defect, although it may be spoken of as ‘jurisdictional,’ appears not to be of such significance that a court must take notice of it even if the opposing party fails to press it, ...; rather, like a defect of‘personal’jurisdiction, it may be overlooked if not timely objected to”); Worcester County Christian Commun., Inc. v. Bd. of Appeals of Spencer, 22 Mass.App.Ct. 83, 85 (1986) (same); Barvenik, 33 Mass.App.Ct. at 131 (noting that under 40A, §17, jurisdictional issues are decided only after a sufficient challenge has been made); Marashlian v. Zoning Bd. of Appeals Newburyport, 421 Mass. 719, 721 (1996) (same).[7]
Here, the Warringtons assert that after the Building Inspector refused to take action against them, the Board had no jurisdiction to hear defendant Blair’s appeal under G.L.c. 40A, §7 because he was not a “person aggrieved” under the statute. Therefore, plaintiffs urge this court to annul the Board’s decision which issued a Cease & Desist Order against them in the use of their property for business purposes.
Plaintiffs’jurisdictional challenge at this stage cannot stand. In Hogan, the Appeals Court held that jurisdictional challenges under 40A, §7 are waived if not timely objected to. 19 Mass.App.Ct. at 402-03. Similarly, in Worcester County Christian Commun., Inc., the Appeals Court, relying on Hogan, rejected a town board’s own jurisdictional challenge after the plaintiff filed a 40A, § 17 appeal. 22 Mass.App.Ct. at 85. There, the plaintiff sought a permit from the board on the specific ground that the inspector had failed to act, which the board construed solely as one to enforce the inspector to act. Id, at 85-86. “Rather than issuing the order [solely on the inspector to act], the board chose to do more. It reached the merits of the application, decided that the permit could not be granted as a matter of law, and advised the plaintiff of its right of appeal under G.L.c. 40A, §17.” Id, at 86. The Court then reasoned that because the board failed to address jurisdictional issues at its own hearing, any claimed jurisdictional defects were waived, and could not be asserted thereafter at a 40A, §17 appeal. Id,
Similarly here, the Warringtons never challenged defendant Blair’s standing as a “person aggrieved” until after the 40A, §17 appeal was filed with this court. Plaintiffs had notice of and were permitted to attend the hearing to defend their rights in the use of their properly as a business. However, at no time before now did they challenge the Board’s authority in hearing Blair’s appeal after Johnson failed to take any action to enforce the by-law as town building inspector. Therefore, consistent with Hogan and Worcester County Christian Commun., Inc., any jurisdictional defect challenges are waived.[8]

Limitations Period under G.L.c. 40A, §7

Building permits must be issued and enforced in accordance with a town’s local ordinance or by-laws. See G.L.c. 40A, §7. However, once a building permit is issued by a person duly authorized to issue such permits, this section states, in relevant part, that:
[I]f real property has been improved and used in accordance with the terms of the original building permit... , no action, criminal or civil, the effect or purpose of which is to compel the abandonment, limitation or modification of the use allowed by said permit or the removal, alteration or relocation of any structure erected in reliance upon said permit by reason of any alleged violation of the provisions of this chapter, or of any ordinance or by-law adopted thereunder, shall be maintained, unless such action, suit or proceeding is commenced. . . within six years next after the commencement of the alleged violation of law.
Id. (emphasis added).
*40 “Section 7 expressly limits its application to the use originally allowed by a building permit.” Bruno v. Bd. of Appeals of Wrentham, 62 Mass.App.Ct. 527, 537 (2004). Moreover, the Appeals Court has “declinefd] to construe the expiration of the six-year limitation period set out in §7 as converting an initially unlawful use to a lawful use, as if by a belated or constructive grant of right.” Id. at 536. Thus, even in instances where a landowner’s nonconforming use of a building has been on-going, the zoning board is authorized to enforce the town’s by-laws. See Moreis v. Oak Bluffs Bd. of Appeals, 62 Mass.App.Ct. 53, 59-61 (2004) (ruling against a landowner whose non-conforming commercial use of the property was challenged forty years after the original permit was issued because he failed to prove that the particular uses he sought to protect were authorized by any prior permits). Finally, “(t]he six-year limitations period in §7 applies to both structural and use violations authorized by a building permit,” and the “fact that a preexisting, unlawful, unpermitted use was incidentally described on an application . . . does not. . . bring the unlawful use within the protection of §7.” Id. at 60.
Here, the Warringtons rely on several factors to assert that their use of the property as a dance studio was protected and that the Order against them should be revoked. First, they claim that the initial permit to build a “bam” and to use the building for “home occupation” protects them in the use of the premises as a dance studio. In addition, plaintiffs argue that the limitations period of G.L.c. 40A, §7 protects them from any adverse action by the Board now. Second, they argue that their nine-year commercial use of the property, coupled with the building inspector’s and town’s knowledge thereof, protects them from enforcement of the Order because the use was open and obvious and they reasonably relied on no recourse being taken against them.
Plaintiffs’ arguments are without merit for several reasons. First, although plaintiffs built a “barn” in accordance with the original building permit, Moréis is clear on the distinctions between structural and use violations when addressing building permits. That is, “it is absurd to suggest that the Legislature in adopting §7, would intend ‘terms of the original building permit’ (emphasis added) to authorize any and all imaginable commercial uses on [the] property.” 62 Mass.App.Ct. at 59. Stated differently, despite the fact that the Warringtons had a building permit to constmct a “barn” on their property, their use of that building as a business was inapposite with the by-law mandating that the use of the building was to be for residential, not commercial, purposes. Moreover, the fact that “home occupation” was written on the building permit, did not bring the unlawful use within the protection of G.L.c. 40A, §7 without more. See id. at 60. Rather, plaintiffs were bound by the permit’s terms and use of the structure as a “home occupation” as defined in the By-laws and could not expand that definition to use the premises for an unlawful purpose, i.e., a commercial business. Id.; see G.L.c. 40A, §7. Additionally, the terms of the original building permit were not “used in accordance with the terms of the original building permit” nor “in accordance with the use allowed by said permit” to use the premises as a “barn,” as that term is used in the town’s By-laws. Therefore, plaintiffs cannot rely on the six-year time bar of §7 to protect them accordingly. See G.L.c. 40A, §7.
Second, plaintiffs cannot now assert laches as a defense to the continued, impermissible use of their property as a business. Despite the fact that the Warringtons used the premises for nine years as a dance studio, and that Building Inspector Johnson and the town knew of such use, Johnson informed plaintiffs, by written letter, in August 1995 that use of the premises as a business was both non-conforming and in violation of the zoning By-laws. In the letter, Johnson also told the Warringtons that a special permit was necessary for their continued use of the property as a business in that district which was specifically zoned “residential.” Hence, their reliance on laches for equitable relief is misplaced because they knew the use of the premises was unlawful. Finally, in Moreis and Bruno, the Appeals Court instructed that reliance on the impermissible, non-conforming use of property does not convert such unlawful use into a lawful use of the property absent a valid permit. Moreis, 62 Mass.App.Ct. at 60; Bruno, 62 Mass.App.Ct. at 537.

ORDER

For the reasons stated herein, it is hereby ordered that plaintiffs’ Motion for Summary Judgment pursuant to Mass.R.Civ.P. 56 is DENIED and Summary Judgment is GRANTED to the defendants.

 “Home occupation” is defined in the By-Laws as: ”[a]ny use customarily conducted for profit by the inhabitants within a dwelling, provided such, use is clearly incidental and secondary to the use of the building for dwelling purposes and does not change the residential character thereof . . .” (Emphasis added.) Instead, “major home occupation” is defined as: “a business or businesses where the operation of the business(es) may have a greater impact on the neighborhood than a customary home occupation. A business(es) shall be deemed a major home occupation if it has one or more of the following characteristics: it employs more than one non-resident on the premises . . . , occupies more than 25% of the floor area of the dwelling..., will routinely service more than three (3) customers or clients on the premises at any one time.”

 Use as a “farm” is permitted as of right and includes “barns” although those terms are not specifically defined in the town By-laws. Instead, the term “barn” is inclusive of “building” which is defined, in relevant part, as: ”[a]ny roofed structure designed for housing or enclosing persons, animals, or personal property. (Emphasis added.)

 Massachusetts courts have determined that “person aggrieved” status is the same throughout G.L.c. 40A, notwithstanding the level of appeal (i.e., before the zoning board or the court).

 Massachusetts courts have determined that jurisdictional defects are waived if not timely objected to under G.L.c. 40A, notwithstanding the level of appeal (i.e., before the zoning board or the court).

 Had the Warnngtons timely objected to Blair’s standing as a “person aggneved” and his assertions that he owned abutting property, the Board may have declined to hear the case. On the other hand, the Board may have overruled such an objection, and decided to enforce the town’s by-laws in the residential zoning district where plaintiffs’ property existed based on the ments of the case. In the latter instance, this case would likely still be before this court on the issue of the limitations challenge pursuant to G.L.c. 40A, §7.