ANDREW SORENTI & another *vs.* BOARD OF APPEALS OF WELLESLEY.

Norfolk.    October 4, 1962. — January 17, 1963.

Present: WILKINS, C.J., SPALDING, WHITTEMORE, CUTTER, KIRK, & SPIEGEL, JJ.

*Zoning,* Frontage, Estoppel, Validity. *Estoppel. Municipal Corporations,* Estoppel.

A local zoning requirement that a lot have frontage on a way was authorized by G. L. c. 40, § 25, as appearing in St. 1933, c. 269, § 1.    [352]

The facts that a building permit for property had been granted, although it had expired, that a substantial amount of construction work had been done on the property without official interference, and that the town had furnished a water service to the property did not estop the town's board of appeals from upholding a denial of a new permit by the building inspector.    [352]

Under an amendment of a town's zoning by-law requiring a minimum frontage on a way of forty feet for a building lot, but providing that such requirement should not apply to any lot having less frontage if at the time of the adoption of the amendment such lot did not "adjoin other land of the same owner," one who was at that time owner of two adjacent rear lots, part of each of which was a strip about ten feet wide extending to and fronting on a way and there adjoining the like strip of the other lot, could not avail himself of the exemption in the amendment as to either lot unless he added thereto such adjoining strip of the other lot for purposes of frontage on the way and so had a right to only one building permit for both lots on the basis of that frontage; and on that

basis, having procured a building permit and erected a building on one of the lots, he was not entitled to a building permit for the other lot. [352–353]

BILL IN EQUITY filed in the Superior Court on February 6, 1961.

The plaintiffs appealed from a final decree entered after hearing by *Coddaire, J.*

*Paul C. Hanna* for the plaintiffs.

*Harry E. Warren,* Town Counsel, for the defendant.

SPALDING, J. This is a bill in equity under G. L. c. 40A, § 21, by way of appeal from a decision of the board of appeals of the town of Wellesley in which the board denied a special exception and a variance, and upheld the building inspector's denial of a building permit. The judge made a report of material facts and incorporated therein the exhibits which were in evidence at the trial. The evidence is not reported. The plaintiffs are husband and wife. Andrew Sorenti will be referred to as the plaintiff.

The findings include the following: In 1932 the plaintiff purchased a tract of undeveloped land in Wellesley, the area of which was 37,300 square feet. The land, located on Oak Street, had an original frontage of 119.8 feet on that street; its northwesterly boundary ran back 346.03 feet; and its southeasterly line extended back 297.28 feet. The rear boundary was 130.89 feet. The plaintiff cleared the land and filled in portions which were wet; he constructed a driveway about 20 feet wide and about 200 feet long on the northerly part. In April, 1950, the land was subdivided into three lots and on June 19, 1951, a plan of the subdivision (from which the accompanying plan is adapted) was filed in the Land Court. Under the subdivision, lot 1 had a frontage of 100 feet on Oak Street and lots 2 and 3 each had a frontage of 9.9 feet on that street.

On June 20, 1951, the plaintiff disposed of lot 1. On the same day the plaintiff conveyed lot 2 to Joyce A. Webber who was a straw titleholder for the plaintiff. On June 21, 1951, the town amended the zoning by-law by requiring a frontage of 40 feet for any lot upon which a building was to be erected. The requirement, however, was not to apply to

any lot having a frontage of less than 40 feet if such lot on June 21, 1951, did not adjoin other land of the same owner available for use in connection with the lot.[1]

[1] Section 9–C of the zoning by-law of the town of Wellesley, as amended, provides: "There shall be provided for each lot upon which a building or structure is hereafter erected or placed a frontage of not less than 40 feet. This requirement shall not apply to any lot having a frontage of less than 40 feet, if such lot on June 21, 1951, does not adjoin other land of the same owner available for use in connection with said lot, nor shall it apply to lots in districts zoned as Business, Business A, Industrial or Industrial A." "Frontage" is defined as "A boundary line of a lot abutting a public or private way."

On September 23, 1954, a building permit was granted for the erection of a house and garage on lot 2. On June 22, 1956, lot 2 was reconveyed to the plaintiff by Webber, the straw, and on the same day the plaintiff conveyed the lot to Joseph and Enny Covati. In September, 1956, a building permit was granted for the erection of a dwelling and garage on lot 3, and the plaintiff proceeded to dig a cellar and a cesspool and cut down some trees. Due to his illness work was discontinued. On June 30, 1958, the building inspector notified the plaintiff that the permit had expired and no further work could be performed under it, and that a new permit must be obtained for future construction work. In August of 1958 the town connected water service to lot 3. In the spring of 1960 the plaintiff commenced the construction of a house on lot 3. The work on it proceeded to a point where the framing in was finished and the plumbing and heating were installed. The building inspector once again reminded the plaintiff of the need for a building permit and the plaintiff ceased work. On August 24, 1960, an application for a permit was denied on the ground that the frontage of lot 3 did not meet the 40 foot minimum prescribed by § 9–C of the zoning by-law. The judge found that the frontage requirement of the by-law applied to lot 3; that on June 21, 1951, when this requirement became effective, lot 3 adjoined other land of the plaintiff which was available for use in connection with lot 3, the "adjoining lot being in the name of one holding a mere title" for the benefit of the plaintiff; that lot 3 did not have a 40 foot frontage on either a public or private way; and that the frontage of lot 3 was on Oak Street, for a distance of 9.9 feet.

Having found the foregoing facts, the judge concluded that the decision of the board upholding the denial of a building permit and denying a special exception and a variance was within the board's jurisdiction and that no modification was required. From a decree in accordance with this conclusion the plaintiffs appealed. It is to be noted that the application for a building permit was denied by the building inspector solely on the ground that lot 3 did not

meet the 40 foot frontage requirement of the zoning by-law. And the inspector's denial was upheld by the board of appeals and by the court on this ground. It is the plaintiffs' contention that, for the various reasons discussed below, this application for a permit ought to have been granted.[1]

The plaintiffs argue that the 1951 amendment to § 9–C of the by-law was ultra vires the enabling act. There is no merit in this contention. *Pierce* v. *Wellesley,* 336 Mass. 517, 521. At the time the amendment was adopted the applicable enabling statute (G. L. c. 40, § 25, as amended by St. 1933, c. 269) provided that ". . . any town . . . may . . . regulate and restrict . . . the size and width of lots, the percentage of lot that may be occupied, the size of yards, courts and other open spaces, [and] the density of population." We are of opinion that this provision was sufficiently broad to authorize the amendment in question. The argument that the by-law is so vague as to come within the principle laid down in *O'Connell* v. *Brockton Bd. of Appeals,* 344 Mass. 208, is without merit. See *Vetter* v. *Zoning Bd. of Appeal of Attleboro,* 330 Mass. 628, 630.

The plaintiffs further argue that the board is estopped to deny the permit by reason of the facts that a permit had previously been granted, that a substantial amount of work had been done on the property without official interference, and that the town had connected the property with water service. That the doctrine of estoppel may not be invoked in such a case was made clear in the very recent case of *Ferrante* v. *Board of Appeals of Northampton, ante,* 158, 162–163, where at page 163 it was said, " 'The governmental zoning power may not be forfeited by the action of local officers in disregard of the statute and the ordinance.' "

We now proceed to an analysis of the amended § 9–C of the by-law. This section requires that there shall be provided for each lot upon which a building or structure is erected or placed a frontage of not less than 40 feet. The section specifically exempts from the frontage requirement

[1] The decision below, in so far as it upheld the denial of a special exception and a variance, is not challenged. At all events, we perceive no error in the decision in these respects.

"any lot having a frontage of less than 40 feet, if such lot on June 21, 1951, does not adjoin other land of the same owner available for use in connection with said lot." The obvious purpose of the quoted provision is to make the frontage requirement inapplicable to lots which were nonconforming at the time the amendment became effective. The nonconforming exemption was not to apply, however, when the lot owner had adjoining land available for use in satisfying the minimum frontage requirement. The rationale of such a provision is that an owner who has or has had adjacent land has it within his power, by adding such land to the substandard lot, to comply with the frontage requirement, or, at least, to make the frontage less substandard. See Rathkopf, The Law of Zoning and Planning (3d ed.) c. 32, pp. 3–4. In other words, the owner cannot avail himself of the nonconforming exemption unless he includes his adjacent land in order to minimize the nonconformity. Otherwise, in a situation like the present, an owner who owned adjacent lots with frontages of 19 feet and 20 feet, respectively, would have greater building rights than the owner of a single lot with a frontage of 39 feet.

The judge specifically found that on June 21, 1951, the plaintiff had adjoining land which was available for use in connection with lot 3. Therefore, after the passage of the amendment, the plaintiff had a right to only one building permit for lots 2 and 3 if he relied on his Oak Street frontage. The building of the dwelling on lot 2 exhausted his right to build structures on the basis of the Oak Street frontage. This construction is implicit in the decision of the court below, and we are of opinion that it was right.

We need not consider the possible relevance of the subdivision control law, G. L. c. 41, § 81L. Neither the decision of the board nor the report of material facts indicates that the subdivision control law was deemed apposite. The case appears to have been tried on the theory that this law was of no materiality, and we have dealt with the case on the same footing. See *Dalton* v. *Post Publishing Co.* 328 Mass. 595, 598–600; *Foster* v. *Everett*, 334 Mass. 14, 18.

*Decree affirmed.*

CUTTER, J. (concurring).   I concur but wish to emphasize that the plaintiffs have not established on this record that the amended by-law wholly precludes Sorenti from all residential or other reasonable use of lot 3.   The record shows that Sorenti, when he conveyed away lot 2, granted an easement over the 9.9 foot strip which was part of lot 3 and reserved an easement over the 9.9 foot strip of lot 2, in each case for road or street purposes.   Whether some appropriate use or development of the land in the light of these easements could affect Sorenti's position under the amended by-law does not appear.   Accordingly, there is no occasion to consider the plaintiffs' contention that the case is governed by decisions such as *Gem Properties, Inc.* v. *Board of Appeals of Milton,* 341 Mass. 99, 104–106.