ERNEST GIOVANNUCCI & another *vs.* BOARD OF APPEALS
OF PLAINVILLE.

Norfolk.   June 10, 1975. — April 12, 1976.

Present: HALE, C.J., GOODMAN, & GRANT, JJ.

*Zoning,* Size of lots, Frontage.   *Subdivision Control.*

Where a zoning by-law exempted from minimum area and frontage re-
quirements lots bearing an endorsement that planning board ap-
proval was not required but also provided that nonconforming, un-
developed, and contiguous lots in common ownership should be
combined and replatted into conforming lots, plaintiffs who pur-
chased from a common owner nonconforming, contiguous lots bear-
ing the endorsement were not entitled to the exemption [242-244];
nor were they entitled to an exemption granted to lots separately de-
scribed in a deed of record at the time of the adoption of the by-law
where the provision for combining and replatting was also applicable
to that exemption [244-245].

CIVIL ACTION commenced in the Superior Court on July 5, 1974.

The case was tried before *Brogna, J.*

*Robert I. Kalis (Leon J. Lombardi* with him) for the defendant.

*Stephen D. Clapp* for the plaintiffs.

GOODMAN, J.    This is an appeal by the board of appeals of Plainville (board) from a judgment of the Superior Court in an action under G. L. c. 40A, § 21. The judgment annulled the board's decision which had sustained the building inspector's denial of two applications, one by Ernest Giovannucci and one by his wife, Ernestine Giovannucci (the plaintiffs), for building permits on lots which they owned separately.[1] The issue on appeal concerns the construction and application of the Plainville zoning by-law adopted in 1965. That by-law, the original zoning provisions for the town, established an "Intensity of Use Schedule" which set 30,000 square feet as the minimum area requirement for a building lot in one of the single family residential districts and 140 feet as the minimum width and frontage requirements. Exemptions from those requirements were provided under certain conditions for "a lot or lots having less than the applicable square footage or frontage requirements, or both . . . ."[2]

---

[1] The plaintiffs also sought variances which the board denied. No argument is made in this court (and no serious attempt seems to have been made in the Superior Court) to contest that decision.

[2] The exemption and the relevant conditions (Chapter III, II, 2.6.C, and Chapter III, II, 2.6.D; hereafter referred to as "section C" and "section D", respectively) are as follows:

"C. In any Zoning District, a lot or lots having less than the applicable square footage or frontage requirements, or both, shall be exempt from either or both requirements aforestated if said lot or lots:

(1) Is a lot in ownership separate from that of adjoining land located in the same Zoning District, at the time of the adoption of this By-Law, or

(2) Is a lot or lots separately described in a deed of record at the time of the adoption of this By-Law, or

(3) Is a lot or lots separately shown on any approved sub-division plan notwithstanding the amount of elapsed time since approval of said plan, or

(4) Is a lot or lots shown on a plan which does not require Planning Board approval under the sub-division law, provided the plan carries the notation that no such approval is so required, and notwithstanding the amount of elapsed time since the notation was made through vote of the Planning Board.

a. Provided that any lot referred to above contains at least 5,000 square feet and in the case of more than one nonconforming, undeveloped and contiguous lots in common

When the by-law was adopted George E. Cassels, Jr., and his wife (Cassels), owned four connected lots (numbered 1 through 4) shown on a plan dated December, 1957, and recorded March 12, 1958, and bearing the endorsement that approval under the Subdivision Control Law was not required (hereafter referred to for convenience as a § 81P endorsement). See G. L. c. 41, § 81P. After a taking in 1963 to widen a street, lot #1 contained 16,618 square feet, lot #2 contained 12,005 square feet, lot #3 contained 12,480 square feet, and lot #4 contained 17,800 square feet. Subsequently on November 16, 1973, Cassels sold lot #1 to Ernest Giovannucci and lot #2 to Ernestine Giovannucci. Thereafter, on January 17, 1974, Cassels conveyed an additional 1,352 square feet to Ernestine Giovannucci contiguous to her lot #2. A plan showing the two lots and the additional footage was recorded in February, 1974, bearing a § 81P endorsement.

The plaintiffs contend that they are entitled to building permits under the exemption designated C(4), see fn. 2 — hereafter referred to as the fourth exemption — for lots shown on a plan bearing a § 81P endorsement as well as

---

ownership not protected under 5A or 7A of Chapter 40A, shall be subject to the provisions of 2.6.D.

"D. With respect to two or more non-conforming, undeveloped and contiguous lots in any Zoning District, in common ownership:

  (1) Said lots shall be combined in all cases where the combination creates less than one fully conforming lot.

  (2) Said lots shall be combined and replatted in accordance with the provisions following where the combination creates a lot in excess of the frontage and square footage requirements applicable thereto, and in such case [footnote omitted]

    a. The combined lots shall be replatted into as many fully conforming lots of exactly the required frontage as possible without in turn retaining or creating a non-conforming lot or lots, provided

    b. That if the replat would create or retain one or more non-conforming lot or lots, the combined lots shall be replatted into as many lots of identical frontage as most nearly conforms to the applicable frontage requirements; which replat fully utilizes all existing frontage represented through the combination of said lots, and which replat in no case creates a lot with a frontage less than 80% of the applicable frontage requirements."

under the exemption designated C (2) — hereafter referred to as the second exemption — for lots separately described in a recorded deed. We disagree.

1. The plaintiffs' contention (on which the trial judge based the judgment) that the fourth exemption applies misconstrues the effect of the immediately following paragraph a (see fn. 2). This paragraph requires the combination and replatting of contiguous nonstandard lots in common ownership which do not have the protection of G. L. c. 40A, § 5A or § 7A, and is framed to maximize the number of standard lots (see section D, fn. 2). We do not accept the plaintiffs' argument that paragraph a has no application, for it is based on the fact that the two lots are not now in common ownership and are shown on a 1974 plan containing a § 81P endorsement. We deem it controlling that, at the time of the adoption of the by-law, the two lots were part of a four lot tract in common ownership and that such protection as may have then been afforded by G. L. c. 40A, § 5A or § 7A, had expired long before the plaintiffs acquired the two lots in 1973.

It seems obvious that in dealing with nonstandard lots, as with the analogous nonconforming use, our point of reference is the effective date of the by-law. See *Howland* v. *Acting Superintendent of Bldgs. and Inspector of Bldgs. of Cambridge,* 328 Mass. 155, 159-160 (1951); *Maynard* v. *Tomyl,* 347 Mass. 397, 399 (1964); *Vassalotti* v. *Board of Appeals of Sudbury,* 348 Mass. 658, 661 (1965); *Smigliani* v. *Board of Appeals of Saugus,* 348 Mass. 794 (1965); *Gaudet* v. *Building Inspector of Dracut,* 358 Mass. 807 (1970). Cf. *Lindsay* v. *Board of Appeals of Milton,* 362 Mass. 126, 131 (1972). A basic purpose of the by-law, to establish generally applicable minimum lot requirements, has as its corollary the purpose to freeze and minimize substandard lots. See 8 McQuillin, Municipal Corporations, § 25.71, p. 189 (3d ed. 1965).

This purpose is further evidenced in the by-law by the elaborate provisions for combining and replatting contiguous lots in common ownership (section D, fn. 2) designed to result in a maximum number of standard lots from each

separate tract of land in single ownership at the effective date of the by-law. This makes immaterial the number of separately described parcels which an owner or his predecessors in title may, over the course of time, have acquired to make up the entire tract. See *Vetter* v. *Board of Appeal of Attleboro*, 330 Mass. 628, 630 (1953). *Vassalotti* v. *Board of Appeals of Sudbury*, 348 Mass. at 660-661; *Smigliani* v. *Board of Appeals of Saugus*, 348 Mass. at 794. It would seem strange, indeed, if, as the plaintiffs in effect contend, these elaborate provisions could be avoided after the adoption of a zoning by-law merely by a conveyance of a portion of a tract which happened to be separately described in a previous deed. An interpretation which permitted this, would, at the least, "lead to confusion in the enforcement of the ordinance." *Vetter* v. *Board of Appeal of Attleboro*, 330 Mass. at 630. The Supreme Judicial Court has not favored manipulations which attempt to preserve nonstandard lots for building purposes. See *Sorenti* v. *Board of Appeals of Wellesley*, 345 Mass. 348, 352 (1963); *Vassalotti* v. *Board of Appeals of Sudbury*, 348 Mass. at 661; *Lindsay* v. *Board of Appeals of Milton*, 362 Mass. at 131-132. See also Note, Substandard Lots And The Exception Clause — "Checkerboarding" As A Means of Circumvention, 16 Syracuse L. Rev. 612 (1965); 2 Anderson, American Law of Zoning, § 8.49 (1968). Further, such an interpretation would result in the anomaly suggested in the *Sorenti* case, *supra*, at 353: — that the owner of a single tract with a frontage of 560 feet would have four buildable lots while the owner of an identical tract made up of five parcels, each with a frontage of 112 feet, would have five buildable lots.

Nor can it avail the plaintiffs that in 1974, some nine years after the adoption of the by-law, they recorded a plan of the two lots with a § 81P endorsement. Whatever protection such an endorsement may give them against future changes in the by-law (see *Bellows Farms, Inc.* v. *Building Inspector of Acton*, 364 Mass. 253, 256 [1973]); it cannot relieve them of compliance with the present by-law. *Alley* v. *Building Inspector of Danvers*, 354 Mass. 6,

7-8 (1968). See *Glacier Sand & Stone Co. Inc.* v. *Board of Appeals of Westwood,* 362 Mass. 239, 242 (1972).

Accordingly, the plaintiffs can bring themselves within the fourth exemption only if the entire four lot tract is so combined and replatted that, applying the provisions of section D, lots #1 and #2 emerge as buildable lots. This has not been demonstrated by the plaintiffs who have the burden. Nor have they attempted to make such a showing.[3]

2. The plaintiffs argue that they are entitled to the second exemption, for lots described in a deed recorded at the time of the adoption of the by-law. This is also based on the erroneous assumption that the combination and replatting provisions have no application. Here, the plaintiffs make the additional argument that paragraph a applies only to the fourth exemption because it is indented under that exemption and designated "a". However, all four exemptions are in one complete sentence to which paragraph a is a proviso (contrast the punctuation of section D(2)a and b). Further, paragraph a applies to "any lot referred to above."

In any event, the arrangement on the page is hardly persuasive in view of the list of exemptions read as a whole. We see no distinction relevant to this case, and the plaintiffs have suggested none, between lots contained on a recorded plan bearing a § 81P endorsement no longer viable under G. L. c. 40A, § 5A (the fourth exemption), and lots described in a recorded deed (the second exemption). Indeed, in this case such a distinction is particularly pointless, since the lots in the recorded deed on which the plaintiffs rely are described by reference to a 1957 plan containing a § 81P endorsement. It is instructive that G. L. c. 40A, § 5A, similarly makes no distinction between lots "lawfully laid out by plan or deed duly recorded" and lots "shown

---

[3] Our holding makes immaterial the plaintiffs' assertion (it amounts to no more) that the combination and replatting requirements might be met by the two lots plus the additional piece conveyed to Ernestine Giovannucci in 1974, which she apparently acquired to avoid the application of section D(1), see fn. 2.

on a plan endorsed . . . pursuant to [§ 81P of chapter 41]."[4]

Accordingly, the judgment is reversed. We have decided this case on a basis not explicitly dealt with by the parties. All of them have focused on the two lots for which building permits were sought without explicitly considering the entire four lot tract as it existed in 1965 and the application to it of the provisions of section D. But we cannot ignore the scheme established in the by-law. Therefore a new judgment is to be entered in the Superior Court remanding the case to the board for further consideration in the light of this opinion. Compare *Chase* v. *Selectmen of Littleton,* 2 Mass. App. Ct. 159, 161 (1974); *McCaffrey* v. *Board of Appeals of Ipswich, ante,* 109, 113-114 (1976).

*So ordered.*

---

[4] We add that we likewise see no relevant distinction between lots on an old plan bearing a § 81P endorsement, the statutory effect of which had, at the adoption of the by-law, long expired (the fourth exemption), and lots on an old plan bearing planning board approval, the statutory effect of which had likewise expired (see section D(3), the third exemption).