PHILIP P. ASACK & another[1] *vs.* BOARD OF APPEALS OF
WESTWOOD.

No. 97-P-2176.

Norfolk. May 13, 1999. - September 15, 1999.

Present: PERRETTA, DREBEN, & SPINA, JJ.

*Zoning,* Variance, Building permit, Lot.

Plaintiffs who purchased property described as two lots, one of which, due to
changes in the zoning by-law, lacked both the frontage and area needed to
be a buildable lot, were not entitled to a variance to build on the
nonconforming lot, where the plaintiffs' ownership of the adjoining lots ef-
fected a merger eliminating the nonconformity. [735-736]

CIVIL ACTIONS commenced in the Superior Court Department
on January 6, 1995, and February 18, 1997, respectively.

The cases were consolidated and heard by *Barbara A. Dortch-
Okara,* J.

*Stephen Gordet* for the plaintiffs.

*Thomas P. McCusker, Jr.,* for the defendant.

DREBEN, J. When in 1988, the plaintiffs purchased property in
Westwood, described in their deed as lots 7 and 8 on a recorded
plan, they were unaware that in 1970, prior to the passage of
the 1975 revision of G. L. c. 40A, including a new § 10,[2] a
variance had been issued for lot 7. The 1975 revision required a
variance to be exercised within a year of its grant.

Discovering the existence of the variance during a refinanc-
ing of the property and relying thereon, the plaintiffs in 1994
sought a building permit. The permit was denied, the denial was

---

[1] Deborah Van Valkenberg.

[2] In relevant part G. L. c. 40A, § 10, as inserted by St. 1975, c. 808, § 3,
provided: "If the rights authorized by a variance are not exercised within one
year of the date of grant of such variance they shall lapse, and may be
reestablished only after notice and a new hearing pursuant [to] this section."
The provision was again amended by St. 1984, c. 195.

upheld by the Westwood board of appeals (board) and, in turn, by the Superior Court.[3] We affirm.

The facts are undisputed and are set forth in the findings of the trial judge. In 1970, Rosemary M. and Robert J. Valinote owned lots 7 and 8 shown on a 1936 plan. Their home was on lot 8, which they purchased in 1936. They acquired lot 7, an adjacent unimproved lot, in 1942. Due to changes in the zoning by-law after 1936, lot 7 in 1970 lacked both the frontage and the area needed to be a buildable lot. The requirements, which continue to the present time, are that the lot have an area of 40,000 square feet and a frontage of 125 feet. In 1970, the Valinotes obtained a variance in order to qualify lot 7 as a buildable lot. The variance contained no language placing a time limit on its validity and could continue in force without limit of time. See *Hogan* v. *Hayes,* 19 Mass. App. Ct. 399, 403 (1985).

In 1972, the Valinotes sold lot 8 to Ronald L. and Marguerite L. Prosser, and in 1973 sold them lot 7. Also in 1973, the Prossers conveyed both lots to Ronald L. Prosser as trustee of the Prosser Family Trust. As trustee, Prosser in 1987 filed a petition for a variance to construct a house on lot 7, but this was denied by the board. Although Prosser filed an appeal from that denial to the Superior Court, his appeal was dismissed for want of prosecution.

In 1988, the plaintiffs purchased both lots from the Prosser Family Trust, and in 1994 applied for the building permit, the denial of which is the subject of this appeal. As indicated earlier, the first notice the plaintiffs received of the 1970 variance was in 1993 or 1994 when a title examination was performed for a refinancing of their property.

The plaintiffs rely on language in *Hogan* v. *Hayes,* 19 Mass. App. Ct. at 403, to support their contention that G. L. c. 40A, § 10, the statute which provides that a variance lapses if not exercised within one year after its grant, see note 2, *supra,* is not retroactive and does not apply to variances granted prior to its effective date. In *Hogan,* the owner of two adjoining lots obtained a variance allowing her to divide her ownership so that she could sell the lot with the existing house and garage and build a small residence on the other lot. She sold the lot with the house in 1975 to Hogan's predecessor in title and sold the

---

[3]Two cases involving the same issues were consolidated. Apparently, there was a procedural difficulty in the first case, and the plaintiffs two years later reapplied for a building permit.

remaining vacant lot in 1982 to Hayes. Faced with Hogan's argument that the variance had lapsed by reason of c. 40A, § 10, Justice Kaplan termed "drastic," and not matching the statute's text, a construction that would destroy wholesale all variances more than one year old remaining unexercised on the effective date of the statute. *Ibid.* He also indicated that a "milder" construction which takes the form of cancelling variances which have not been exercised within a year of the new statute "might put a great and insupportable strain on the statutory language." *Ibid.*

As in *Hogan*, we need not reach the broad issue of retroactivity. We also need not decide whether the trial judge was correct in ruling that there was no exercise of the variance by the 1972 conveyance of lot 8 to the Prossers.[4] Even if we assume that the sale was such an exercise, we agree with the defendant board which in its decision stated, "[T]o the extent that the separation of said Lot 7 and Lot 8 could in any way be determined an exercise of a variance, the subsequent merger of Lot 7 and Lot 8 in common ownership in the absence of anything more, would nullify any type of an exercise."

Unlike the situation in *Hogan*, where the two lots ended up in different ownership, here the subsequent purchase of lot 7 by the Prossers, who were already the owners of lot 8, effected a merger as did the later purchase of both lots by the plaintiffs. This result is closely analogous to the "principle of long-standing application in the zoning context [with regard to nonconforming exemptions]: a landowner will not be permitted to create a dimensional nonconformity if he [can use] his adjoining land to avoid or diminish the nonconformity." *Planning Bd. of Norwell* v. *Serena*, 27 Mass. App. Ct. 689, 690 (1989), and

---

[4]The plaintiffs argue, again relying on *Hogan*, that the 1972 sale of lot 8 was an exercise of the variance. In *Hogan*, the court found that there was a sufficient exercise of the variance by the sale of the lot containing the house in 1975 because, without it, the built-on lot would have been in manifest violation of the lot area and minimum frontage requirements. In the present case the board and the Superior Court judge distinguished *Hogan* on the ground urged by the defendant board, namely that a variance was not required for lot 8, that it had status as a valid nonconforming use, and was not dependent upon a variance to comply with the zoning by-law. The facts set forth in *Hogan* and in the record of the present case are insufficient for us to accept that distinction. The lots in *Hogan* were originally separate lots and acquired by the owner at different times, see *Hogan* at 400 n.3, and the discussion of the court appears to treat the two lots as merged.

cases cited, *S.C.*, 406 Mass. 1008 (1990). *Burke* v. *Zoning Bd. of Appeals of Harwich,* 38 Mass. App. Ct. 957, 958-960 (1995).

Moreover, "[a]djoining parcels held in common ownership are generally considered one lot for zoning purposes. *Heald* v. *Zoning Bd. of Appeals of Greenfield,* 7 Mass. App. Ct. 286, 290 (1979). The 'usual construction of the word "lot" in a zoning context ignores the manner in which the components of a total given area have been assembled and concentrates instead on the question whether the sum of the components meets the requirements of the by-law.' *Becket* v. *Building Inspector of Marblehead,* 6 Mass. App. Ct. 96, 104 (1978)." *Girard* v. *Board of Appeals of Easton,* 14 Mass. App. Ct. 334, 335 (1982). A person owning adjoining record lots may not artificially divide them so as to restore old record boundaries to obtain a grandfather nonconforming exemption; to preserve the exemption the lots must retain "a separate identity." *Lindsay* v. *Board of Appeals of Milton,* 362 Mass. 126, 132 (1972).

A basic purpose of the zoning laws is "to foster the creation of conforming lots." *Murphy* v. *Kotlik,* 34 Mass. App. Ct. 410, 414 n.7 (1993). See *Giovannucci* v. *Board of Appeals of Plainville,* 4 Mass. App. Ct. 239, 242-243 (1976). We see no reason why this purpose, which is reflected in the zoning principle that precludes an owner from availing himself of a nonconforming exemption unless he includes his adjacent land in order to minimize the nonconformity, *Sorenti* v. *Board of Appeals of Wellesley,* 345 Mass. 348, 353 (1963), should not also apply to the plaintiffs who by reason of their deed from the Prossers own both lots 7 and 8. Their ownership of lot 7, which is adjacent to nonconforming lot 8, reduces or eliminates the nonconformity. See *Vetter* v. *Zoning Bd. of Appeal of Attleboro,* 330 Mass. 628, 630-631 (1953). For this reason, they cannot avail themselves of the 1970 variance, and the denial of the building permit was proper.

Since the plaintiffs, by their own admission, were not aware of the variance when they bought the property, no equitable considerations militate against this result. Compare *Hogan* v. *Hayes,* 19 Mass. App. Ct. at 404, where the plaintiffs' position opposing a building permit was described as "so intrinsically inequitable that it should not prevail."

*Judgment affirmed.*