ANNE PRESTON vs. BOARD OF APPEALS OF HULL & another.[1]

No. 98-P-1266.

Plymouth. December 8, 1999. - March 30, 2001.

Present: KASS, GREENBERG, & BECK, JJ.

*Zoning,* Nonconforming use or structure, Lot, Exemption, Building permit. *Statute,* Construction.

> This court concluded that the Legislature did not intend to reject the common-law merger doctrine in enacting § 6 of G. L. c. 40A, the Zoning Act, St. 1975, c. 808 [238-241], with the result that two vacant contiguous lots, separately owned at the time of a zoning by-law change that made them nonconforming for purposes of constructing a dwelling, merged into one conforming lot under the common-law merger doctrine when they were subsequently purchased by one owner, and the new owner was not entitled under § 6 to a building permit for one lot without the other [241-244].

CIVIL ACTION commenced in the Superior Court Department on August 26, 1997.

The case was heard by *Suzanne V. DelVecchio,* J., on motions for summary judgment.

*Walter L. Sullivan* for the plaintiff.

*James B. Lampke,* Town Counsel, for the defendants.

*F. Sydney Smithers,* for The Abstract Club & another, amici curiae, submitted a brief.

BECK, J. The plaintiff owns two vacant contiguous lots in Hull, neither of which complies with the current zoning by-law. She appeals from a Superior Court judgment affirming the denial of her application for a building permit for one of the lots. The building commissioner, upheld by a decision of the board of appeals of Hull, denied the plaintiff's application on the ground that under a long-standing zoning principle, the two noncom-

---

[1]Building Inspector of Hull.

plying lots had merged into a single conforming lot. See *Planning Bd. of Norwell* v. *Serena*, 27 Mass. App. Ct. 689, 690 (1989), *S.C.*, 406 Mass. 1008 (1990); *Asack* v. *Board of Appeals of Westwood*, 47 Mass. App. Ct. 733, 736 (1999). Relying on the allegedly plain language of the first sentence of G. L. c. 40A, § 6, fourth par., and on its legislative history, the plaintiff claims she is entitled to an exemption from the zoning by-law with which her lots are not in compliance because the lots were in separate ownership at the time of the amendments to the by-law. The amici, the Abstract Club and the Massachusetts Conveyancers Association, Inc., support her argument. We affirm.

*Facts.* The plaintiff purchased two lots in the fall of 1987, one in September and the other in November. The lots are rectangular and have identical dimensions: fifty feet of frontage on Edgewater Road in Hull; depth of 125 feet; and therefore an area of 6,250 square feet. The lots are contiguous along a side lot line. A substantial portion of the rear of each lot is below the mean high water mark of the Weir River.

Those dimensions conformed to the Hull zoning by-law until October, 1969, when the town increased the minimum frontage requirement to sixty feet and the minimum area requirement to 6,500 square feet. A second amendment in 1978 increased the minimum dimensions again, this time to seventy-five feet of frontage and 12,000 square feet of area. At the time of these zoning changes, the lots were separately owned.

In the fall of 1996, nine years after she purchased the lots, the plaintiff filed a "buildable lot inquiry form" requesting permission to build on one of the lots. The Hull building department rejected the request, placing an "x" on the form in the space before the item, "Does not conform with Chapter 40A, Section 6 as per information provided." The space labeled "reason" contained the following explanation: "[The] [p]arcel has been held in common ownership with [the other parcel] since Nov. 6, 1987. The parcel became nonconforming on October 20, 1969. These two parcels constitute one conforming lot." See *Mendes* v. *Board of Appeals of Barnstable*, 28 Mass. App. Ct. 527, 528-529 (1990) (defining "nonconforming").

The plaintiff appealed to the board of appeals (board) pursu-

ant to G. L. c. 40A, § 15, claiming that, because the lots were separately owned at the time they became nonconforming, both lots were exempt from compliance with the increased minimum frontage and area requirements, i.e., "grandfathered," under the first sentence of the fourth paragraph of § 6. A majority of the three-member board rejected this argument and affirmed the commissioner's decision, whereupon the plaintiff filed an action for judicial review pursuant to G. L. c. 40A, § 17. Finding "no compelling reason to depart [from] the widely-accepted merger doctrine," a Superior Court judge allowed the board's motion for summary judgment and affirmed the action of the commissioner and the board.

*Discussion.* "A basic purpose of the zoning laws is 'to foster the creation of conforming lots.' . . . [T]his purpose . . . is reflected in the zoning principle that precludes an owner from availing [herself] of a nonconforming exemption unless [she] includes [her] adjacent land in order to minimize the nonconformity." *Asack* v. *Board of Appeals of Westwood,* 47 Mass. App. Ct. at 736, quoting from *Murphy* v. *Kotlik,* 34 Mass. App. Ct. 410, 414 n.7 (1993). "[A]djacent lots in common ownership will normally be treated as a single lot for zoning purposes so as to minimize nonconformities." *Seltzer* v. *Board of Appeals of Orleans,* 24 Mass. App. Ct. 521, 522 (1987) (citing cases). "[This] general rule has been consistently applied, before and after the enactment of [our current zoning enabling act, St. 1975, c. 808]." Bobrowski, Massachusetts Land Use and Planning Law § 5.3.1, at 199 (1993). See *Heald* v. *Zoning Bd. of Appeals of Greenfield,* 7 Mass. App. Ct. 286, 289 (1979) (citing *Batchelder* v. *Rand,* 117 Mass. 176, 178 [1875], and *Orr* v. *Fuller,* 172 Mass. 597, 600 [1899], noting that even before the advent of zoning laws, where contiguous parcels were conveyed as separate parcels, the whole tract constituted one "lot" for purposes of determining attachment of a mechanic's lien); *Planning Bd. of Norwell* v. *Serena,* 27 Mass. App. Ct. at 690 (citing cases); *DiStefano* v. *Stoughton,* 36 Mass. App. Ct. 642, 645 (1994).

The plaintiff argues, however, that because her lots were separately owned at the time of the amendments to Hull's zoning by-law, the first sentence of the fourth paragraph of G. L.

c. 40A, § 6, entitles her to an exemption from the more restrictive zoning provisions. That sentence provides as follows:

> "Any increase in area, frontage, width, yard, or depth requirements of a zoning ordinance or by-law shall not apply to a lot for single and two-family residential use which at the time of recording or endorsement, whichever occurs sooner[,] was not held in common ownership with any adjoining land, conformed to then existing requirements and had less than the proposed requirement but at least five thousand square feet of area and fifty feet of frontage."

This provision "grandfathers" once buildable lots held in separate ownership at the time a zoning change resulted in a particular parcel losing its status as a valid residential lot. The purpose of this provision is "to freeze and minimize substandard lots," *Giovannucci* v. *Board of Appeals of Plainville*, 4 Mass. App. Ct. 239, 242 (1976) (concerning G. L. c. 40A, § 5A, the predecessor of our current § 6), while at the same time protecting landowners from the hardship of not being able to use a once valid residential lot. See *Sturges* v. *Chilmark*, 380 Mass. 246, 261 (1980); *Adamowicz* v. *Ipswich*, 395 Mass. 757, 764 (1985); *Planning Bd. of Norwell* v. *Serena*, 27 Mass. App. Ct. at 690. Compare *Vetter* v. *Zoning Bd. of Appeal of Attleboro*, 330 Mass. 628, 630 (1953) (same principle, local zoning by-law); *Sorenti* v. *Board of Appeals of Wellesley*, 345 Mass. 348, 353 (1963) (same). The question is whether G. L. c. 40A, § 6, fourth par., entitled the plaintiff to build on each of her nonconforming lots.

The plaintiff argues that the plain words of § 6 — "[a]ny increase in area [or] frontage . . . shall not apply to a lot . . . which at the time of recording . . . was not held in common ownership" — apply to her lots. We have found no case precisely on point. Although there are cases that reject the merger doctrine even with commonly held lots, those cases are generally distinguishable. In *Carciofi* v. *Board of Appeal of Billerica*, 22 Mass. App. Ct. 926 (1986), cited in the board's decision in support of the plaintiff's position, we held that there was "no single ownership of both lots" at any time, *id.* at 927, even though the husband and wife were clearly the parties in interest in both lots. That case is a two-page rescript which has never

been cited and has been undermined by subsequent case law.
Cf. *DeStefano* v. *Stoughton*, 36 Mass. App. Ct. at 644 (rejecting
"checkerboard" conveyances and determining that key is not
form of ownership but control). Other cases grandfathering
undersized lots despite common ownership involve indulgent
local zoning by-laws, rather than G. L. c. 40A. See *Clarke* v.
*Board of Appeals of Nahant*, 338 Mass. 473 (1959) (which the
Supreme Judicial Court in *Vassalotti* v. *Board of Appeals of
Sudbury*, 348 Mass. 658, 661 [1965], described as addressing
an "unusual by-law and an ambiguous amendment"); *Lee* v.
*Board of Appeals of Harwich*, 11 Mass. App. Ct. 148 (1981);
*Seltzer* v. *Board of Appeals of Orleans*, 24 Mass. App. Ct. 521.

The "crucial inquiry for grandfathering purposes is the 'status
of the lot immediately prior to the zoning change' that rendered
the lot nonconforming." Bobrowski, Massachusetts Land Use
and Planning Law § 5.3.1, at 198, quoting from *Adamowicz* v.
*Ipswich*, 395 Mass. at 762-763. See *Boulter Bros. Constr. Co.* v.
*Zoning Bd. of Appeals of Norfolk*, 45 Mass. App. Ct. 283, 286-
287 (1998). There is no dispute that the lots at issue here were
separately owned at the time of the zoning changes.

We thus confront the apparent conflict between the preexist-
ing common law principle of merger and the words of G. L.
c. 40A, § 6. "As has long been recognized, a statute should not
be interpreted as being at odds with the common law 'unless
the intent to alter it is clearly expressed.' " *Commonwealth* v.
*Burke*, 392 Mass. 688, 690 (1984), quoting from *Commonwealth*
v. *Knapp*, 9 Pick. 495, 514 (1830). We read a statute "in light
of the common law that existed at the time the statute was
enacted," even when the Legislature has omitted a proposed
amendment on point. *Guaranty-First Trust Co.* v. *Textron, Inc.*,
416 Mass. 332, 336 (1993). See *Ferullo's Case*, 331 Mass. 635,
637 (1954) ("Statutes are to be construed in the light of the
preexisting common and statutory law with reference to the
mischief probably intended to be remedied. It is not to be lightly
supposed that radical changes in the law were intended where
not plainly expressed." See also *National Fire Ins. Co.* v. *Gog-
gin*, 267 Mass. 430, 436 (1929). See generally, 2B Singer, Suth-
erland Statutory Construction § 50.01 (6th ed. 2000). We also

note that the choice here does not involve "read[ing] into the statute a provision which the Legislature did not see fit to put there." *Commissioner of Rev.* v. *Cargill, Inc.*, 429 Mass. 79, 82 (1999), quoting from *King* v. *Viscoloid Co.*, 219 Mass. 420, 425 (1914).

The plaintiff claims, as do the amici, that the legislative history of G. L. c. 40A, the Zoning Act, St. 1975, c. 808, demonstrates that the Legislature considered and rejected the incorporation of the merger doctrine into that statute. Indeed, despite upholding the building commissioner, the board of appeals concluded that "[a] review of the legislative history of . . . [s]ection 6 of G. L. c. 40A, clearly shows that the Legislature considered and *rejected* specific language which would have required the merger of single and separate ownership lots after the effective date of the zoning change if such lots were acquired by the same owner" (emphasis original). Acknowledging that there are "[s]trong policy arguments" in favor of the merger doctrine, the amici nevertheless stress that the "plain words of the statute must prevail over policy considerations."

Our task, then, is to determine whether there is evidence of a clear legislative intent to eliminate application of the merger doctrine to a single owner's purchase of adjacent lots after a zoning change, where the lots were in separate ownership before that change. We turn to a review of the legislative history to determine whether the Legislature did indeed consider and explicitly reject language that would have incorporated the merger doctrine into G. L. c. 40A.

The impetus for St. 1975, c. 808, began with a Report of the Department of Community Affairs (a cabinet level executive branch agency, now called the Department of Housing and Community Development, see G. L. c. 23B) Relative to Proposed Changes and Additions to the Zoning Enabling Act. 1972 House Doc. No. 5009. See *Emond* v. *Board of Appeals of Uxbridge*, 27 Mass. App. Ct. 630, 634 (1989). The report, which recommended a "comprehensive revision" of the Zoning Act was the product of "a study of existing zoning legislation." 1972 House Doc. No. 5009, at 7. Filed at the beginning of the 1972 legislative session, the report declared that "[t]here is a

unanimity of opinion among zoning and planning authorities that the ultimate objective of zoning would be furthered by the eventual elimination of nonconformities in most cases." *Id.* at 39. The report included a draft statute, An Act to Modernize the Zoning Enabling Statute. *Id.* at 81-94. Section 6 of the proposed legislation included a proviso explicitly expanding the terms of § 5A, the predecessor to § 6. Under § 5A, lots held in separate ownership at the time of a zoning amendment were deemed to be nonconforming under the amended by-law. The proposed § 6 provided that to retain its nonconforming status such a lot "not [be] subsequently held in common ownership with . . . adjoining land located in the same residential district." *Id.* at 89. See Bobrowski, Massachusetts Land Use and Planning Law § 5.3.1., at 198.

The Legislature referred the Department of Community Affairs (DCA) report to the Joint Committee on Urban Affairs (committee) for further "investigation and study," 1972 House Doc. No. 6001, on a variety of subjects, including, e.g., cluster zoning and planned unit development, and a subdivision moratorium. See *Emond* v. *Board of Appeals of Uxbridge*, 27 Mass. App. Ct. at 635 n.4. There was no vote in the 1972 session on the proposed legislation.

During the 1973 and 1974 legislative sessions, DCA filed "updated" reports and the committee filed "interim" reports. See 1973 House Doc. Nos. 6035 and 6200; 1974 House Doc. No. 2522. The committee "held public hearings on various petitions referred to it" and met in executive session to make technical revisions to the Zoning Act. 1973 House Doc. No. 7369. In submitting its 1973 report, the committee attached twenty-two "separate legislative appendices." 1973 House Doc. No. 6200, at 7. It again recommended passage of the DCA draft legislation including the "subsequently held in common ownership" language. In the 1974 session, the committee's third interim report included a bill containing the merger language. 1974 House Doc. No. 2522, at 24. That bill, along with at least forty-three other bills concerning various Zoning Act issues, was referred back to the committee for further study and review. 1974 House Doc. Nos. 2522, at 8-9; 5864, at 1-4. The bill that emerged from that review was House Doc. 5864. It did not

include the merger language. The committee recommended that it ought to pass. A substitute bill was recommended for passage by the Committee on Bills in the Third Reading. 1974 House Doc. 6480. There was no vote on either of these bills.

Finally, on December 22, 1975, what became c. 808 of the Acts of 1975 was enacted. The law did not contain the "subsequently held in common ownership" language. There followed a series of three bills. See 1975 House Doc. Nos. 525, 5457, and 5600. None contained the "common ownership" language. During the legislative process, various amendments to the bill were considered and voted upon. See 1975 Journal of the House vol. 1, at 1243-1245. None concerned the issue before us.

This history does not persuade us that the Legislature "rejected" the language incorporating the merger doctrine. Whatever the reason, the "subsequent common ownership" language appears to have fallen by the wayside in the committee during the 1974 session and did not reappear in the 1975 session. There was never a legislative vote on the subject. On the facts of this case, as we have been able to determine them, its absence does not constitute the kind of clear expression the cases require, particularly since the merger doctrine is a powerful tool in achieving the very goal of the Zoning Act. See *Ferullo's Case*, 331 Mass. at 637; *Asack* v. *Board of Appeals of Westwood*, 47 Mass. App. Ct. at 736. We presume, particularly given the lengthy legislative process, that the Legislature was aware of the preexisting and well-established merger doctrine. See *Condon* v. *Haitsma*, 325 Mass. 371, 373 (1950). See generally 2B Singer, Sutherland Statutory Construction, § 50.01, at 140 (6th ed. 2000) ("The legislature is presumed to know the common law before the statute was enacted"). More explicit language was required to eliminate its application to G. L. c. 40A, § 6. Compare *Chakrabarti* v. *Marco S. Marinello Associates, Inc.*, 377 Mass. 419, 423 (1979) (no jurisdiction of G. L. c. 93A claims in Hampden Housing Court; reference to jurisdiction of such claims deleted on floor of House of Representatives; later legislation enacted to address that holding, see *Worcester Heritage Soc., Inc.* v. *Trussell*, 31 Mass. App. Ct. 343, 346 n.3 [1991]). But cf. *Green* v. *Wyman-Gordon*

*Co.*, 422 Mass. 551, 556-557 (1996) (failure to enact version of sexual harassment bill containing language allowing action under statute to be enacted, G. L. c. 214, § 1C, without filing complaint under G. L. c. 151B, held to be intentional where c. 151B provides broad and comprehensive remedial scheme).

Because the zoning changes had already taken place at the time the plaintiff bought her lots, there is no equitable basis for her claim that she is entitled to a building permit for one of her lots without the other. Compare *Sorenti* v. *Board of Appeals of Wellesley*, 345 Mass. 348, 353 (1963) (affirming denial of building permit; no exemption even when plaintiff previously obtained building permit and some work had already been done); *Raia* v. *Board of Appeals of N. Reading*, 4 Mass. App. Ct. 318, 322 (1976) (no hardship sufficient to support variance for lot then in separate ownership where lot could have been combined with another lot when they were owned in common). Finally, we also note that the plaintiff waited nine years after she purchased her lots to seek a building permit. Even someone who owned both lots in common prior to the zoning change would have been limited to five years to exercise her grandfathered rights under the second sentence of the fourth paragraph of G. L. c. 40A, § 6.

*Judgment affirmed.*