MAUREEN M. MAURI & another[1] *vs.* ZONING BOARD OF
APPEALS OF NEWTON & others.[2]

No. 12-P-359.

Suffolk. December 5, 2012. - February 22, 2013.

Present: CYPHER, BROWN, & COHEN, JJ.

*Real Property,* Merger. *Zoning,* Person aggrieved, Lot size, Nonconforming
use or structure. *Practice, Civil,* Standing. *Statute,* Construction.

In a civil action, the Land Court judge correctly concluded that the plaintiff
abutters had standing to appeal a decision of the defendant zoning board of
appeals of a city, affirming the issuance of a building permit, where the
defendant homeowners' efforts to rebut the plaintiffs' presumption of
standing failed to show that the plaintiffs had no factual basis for their
claim of harm from the overcrowding of their property, and the fact that
the proposed dwelling meets current setback requirements had no effect on
the plaintiffs' standing. [339-341]

In a civil action challenging a decision of a city's zoning board of appeals that
affirmed the issuance of a building permit, the Land Court judge correctly
concluded that two adjoining lots owned in common had merged for pur-
poses of zoning and, thus, did not qualify for an exemption contained in
the local zoning ordinance. [341-344]

CIVIL ACTION commenced in the Land Court Department on
January 7, 2010.

The case was heard by *Harry M. Grossman,* J., on motions
for summary judgment.

*Mark W. Corner* for Bonnie E. Chansky & others.

*Hugh V.A. Starkey* for the plaintiffs.

*Jason A. Rosenberg, G. Michael Pierce, & Terrence P. Morris,*
pro se, amici curiae, submitted a brief.

*R. Lisle Baker & Brian Yates,* pro se, amici curiae, submitted
a brief.

[1]Ronald A. Mauri.

[2]John D. Lojek, as commissioner of inspectional services of Newton; Bon-
nie E. Chansky; James D. Chansky; and Ernest D. Rogers.

BROWN, J. Once again, we are asked to address the longstanding rule that considers adjoining undersized lots held in common ownership as one lot for zoning purposes, in the context of a local zoning ordinance that has been interpreted to provide protection against such merger. A judge in the Land Court granted summary judgment to the plaintiff abutters, Maureen and Ronald Mauri, and revoked a building permit issued by the city of Newton (city) inspectional services department for a residential lot owned by the defendants, Bonnie and James Chansky. On appeal, the Chanskys contend that (1) the Mauris lack standing and (2) the judge erred in concluding that the two adjoining lots owned by the Chanskys had merged for purposes of zoning and thus do not qualify for an exemption contained in the local zoning ordinance. We affirm the judgment.

The background facts were stipulated by the parties. Three abutting lots on Bradford Road in the city were created by a plan dated July 9, 1890. Lots forty and thirty-nine, now owned by the Chanskys, abut one another and lot thirty-eight, owned by the Mauris, abuts lot thirty-nine. Each of the three lots contains 8,400 square feet and sixty feet of frontage.

Lots forty and thirty-nine have been held in common ownership since 1916. Since at least 1917, a single-family home has been located on lot forty (the house lot) and a garage, servicing the single-family home, has been located on lot thirty-nine (the garage lot). There were no minimum frontage or lot size requirements in 1890 when the lots were created, or in 1917, when the house and garage were constructed.

The city first adopted its zoning ordinance (ordinance) in 1922, but it imposed no minimum frontage or lot size requirement on the lots at issue. In 1940, the ordinance was amended and imposed a frontage requirement of eighty feet and a lot size requirement of 10,000 feet for lots in the zoning district in which the lots at issue are located. The parties agree that the lots became preexisting nonconforming lots in 1940, but it is unclear whether the lots were protected from merger at that time.

The Chanskys acquired the house lot and the garage lot by a single deed dated July 15, 1987. Current zoning in the "[s]ingle [r]esidence 2" district in which the lots are located requires

eighty feet of frontage and 10,000 square feet of area for lots created before December 7, 1953. The minimum sideline setback is seven and one-half feet. A detailed record of the proceedings before the zoning board of appeals indicates that historically the city's assessing department has treated the garage lot as unbuildable and has assessed it at a much lower rate than the Mauris' or Chanskys' abutting house lots of the same size.

On August 3, 2009, the inspectional services department issued a building permit to the Chanskys for the construction of a single-family dwelling on the garage lot. The proposed dwelling will be substantially larger than the existing garage, contain a second story, and extend fifty-five feet in length alongside the Mauris' dwelling. Thirteen windows will face the Mauris' home. The dwelling will be between seven and one-half and ten feet from the Chansky-Mauri property line, which complies with current setback requirements. The Mauris' home is located approximately four and one-half feet from the common property line.[3] Thus, the dwellings will be within twelve to fourteen and one-half feet of each other. Maureen Mauri testified at her deposition that two bedrooms, the den where they spend much of their time, her desk area, and their rear deck would be in close view from the proposed dwelling. She also identified concerns with noise, light, views, diminution in value, and density in the neighborhood.

The Mauris appealed to the zoning board of appeals, which narrowly affirmed the decision to issue a building permit. The board issued a detailed record of proceeding and decision. It reflects that the commissioner of inspectional services indicated that whether the garage lot was considered "vacant" was never part of the city's interpretation under G. L. c. 40A, § 6, par. 4. In issuing the building permit, the inspector relied on § 30-15 of the ordinance, which provides that the density and dimensional controls set forth in the ordinance "shall apply to all buildings, structures, and uses in each of the said districts," but contains an exception for residential lots if certain criteria are met as

---

[3]The record does not indicate when the Mauri dwelling was constructed, but there is no suggestion that the dwelling did not comply with then existing setback requirements, if any.

set forth in the margin.[4] The commissioner determined that the only reasonable interpretation of § 15(c)(3)(b) is that where there are two adjoining lots and one is improved with a dwelling, the other is buildable. Although the board voted three-to-two to overturn the decision of the inspector, the vote required a supermajority of four members, and the board, therefore, affirmed the inspector's decision to grant the building permit.

The Mauris appealed to the Land Court and on cross motions for summary judgment, the judge first determined that the Mauris had standing and then, interpreting the local ordinance by applying accepted rules of grammatical construction, reversed and revoked the building permit. The Chanskys appealed.[5]

*Discussion.* A. *Standing.* The Chanskys first challenge the Mauris' standing to appeal from the board's decision. We need not dwell on this issue. A line of cases, culminating most recently

---

[4]Section 30-15(c) provides exceptions applicable in residential districts as follows:

"Any increase in area, frontage, or setback requirements . . . shall apply to any lot in a residential zoning district except to the extent that either the provisions of [G. L. c. 40A, § 6,] as in effect on January 1, 2001, or the following provisions, provide otherwise. Any increase in area, frontage, or setback requirements prescribed in [this ordinance] shall not apply to any lot in a residential district if all of the following requirements are met:

"(1) At the time of the recording or endorsement . . . or on October 11, 1940, if the recording or endorsement occurred before October 11, 1940, the lot (a) conformed to the requirements in effect at the time of recording or endorsement, whichever occurred sooner, but did not conform to the increased requirements, and (b) had at least five thousand square feet of area, and (c) had a least fifty feet of frontage.

"(2) The size or shape of the lot has not changed since the lot was created unless such change complied with the provisions of section 30-26.

"(3) Either (a) [t]he lot was not held in common ownership at any time after January 1, 1995, with an adjoining lot or lots that had continuous frontage on the same street with the lot in question, or (b) [i]f the lot was held in common ownership at any time after January 1, 1995, with an adjoining lot or lots that had continuous frontage on the same street with the lot in question, such lot had on it a single family or two-family dwelling."

[5]The following submitted briefs for amici curiae: Jason A. Rosenberg, G. Michael Pierce and Terrence P. Morris, and R. Lisle Baker and Brian Yates.

with *81 Spooner Rd., LLC* v. *Zoning Board of Appeals of Brookline*, 461 Mass. 692, 704-705 (2012) (*81 Spooner Rd. LLC*), clearly establishes that abutters raising unrefuted issues related to overcrowding have standing to challenge further construction in an already overly dense zoning district. See *Dwyer* v. *Gallo*, 73 Mass. App. Ct. 292, 296 (2008). Although espoused in terms of privacy concerns, the deposition testimony of Maureen Mauri clearly indicates that she is aggrieved by construction of a dwelling which she contends violates the density provisions of the zoning ordinance and its close proximity to her home overcrowds her home. See *81 Spooner Rd., LLC, supra* at 704-705. See also *Dwyer*, 73 Mass. App. Ct. at 297 ("crowding of an abutter's residential property by violation of the density provisions of the zoning by-law will generally constitute harm sufficiently perceptible and personal to qualify the abutter as aggrieved and thereby confer standing to maintain a zoning appeal"). The Chanskys' efforts to rebut the Mauris' presumption of standing, focused on demonstrating no diminution in value of the Mauris' property as a result of constructing a new residential dwelling on the garage lot, fail to show that the Mauris had no factual basis for their claim of harm from the overcrowding of their property. *81 Spooner Rd., LLC, supra* at 705.

The Chanskys contend that because the proposed dwelling meets the current setback requirements of the lot, the Mauris' claim of overcrowding must fail. We disagree. "A primary purpose of requiring minimum lot sizes is assuring open space to a neighborhood . . . ." *Federman* v. *Board of Appeals of Marblehead*, 35 Mass. App. Ct. 727, 731 (1994). Here, the Chanskys propose to construct a second dwelling on a parcel that the Mauris contend may legally contain only one. The proposed additional dwelling will lie within twelve feet of their home and contain a number of windows aligned to allow a view into their home. Regardless of whether the minimum setbacks are met, we cannot fairly say the Mauris' allegations of aggrievement caused by further development of an already overly dense zoning district in violation of the density provisions of the zoning ordinance fail to confer standing on them on these facts. See *81 Spooner Rd., LLC, supra* at 695 (abutter contending that new

construction would violate only the maximum allowable floor-to-area ratio identified a legally cognizable injury, to wit, overcrowding from violation of the density provisions of the zoning by-law).

B. *Merger.* "A basic purpose of the zoning laws is 'to foster the creation of conforming lots.' " *Asack* v. *Board of Appeals of Westwood,* 47 Mass. App. Ct. 733, 736 (1999), quoting from *Murphy* v. *Kotlik,* 34 Mass. App. Ct. 410, 414 n.7 (1993). Thus, when adjacent undersized lots are held in common ownership, they "will normally be treated as a single lot for zoning purposes so as to minimize nonconformities." *Carabetta* v. *Board of Appeals of Truro,* 73 Mass. App. Ct. 266, 268 (2008) (*Carabetta*), quoting from *Preston* v. *Board of Appeals of Hull,* 51 Mass. App. Ct. 236, 238 (2001) (*Preston*). "This general rule has been applied both prior to and 'after the enactment of our current zoning enabling act. St. 1975, c. 808.' " *Carabetta, supra* at 268-269, quoting from *Preston, supra.* Consistent with the merger doctrine, the "grandfather" provision contained in G. L. c. 40A, § 6, par. 4, provides protection from increases in lot dimension and area requirements only to nonconforming lots that are not held in common ownership with adjoining land which could be used to eliminate or reduce the nonconformity. *Carabetta, supra* at 269. The protections provided in § 6, therefore, do not apply to the garage lot.[6]

Section 6, however, allows individual cities and towns to provide broader grandfather protection. G. L. c. 40A, § 6, par. 4, final sentence. We have said that should a city "choose to adopt a more liberal grandfather provision, it must do so with clear language." *Carabetta, supra* at 269. We turn then to Newton's zoning ordinance to determine whether it provides protection for the garage lot.

---

[6]The fourth paragraph of G. L. c. 40A, § 6, applies only to vacant land or to a lot that was improved with a structure at one time but the by-law at the time of purchase permitted building on the lot. *Dial Away Co.* v. *Zoning Bd. of Appeals of Auburn,* 41 Mass. App. Ct. 165, 169 n.7 (1996). In addition, we have concluded that local by-laws which are the analog to c. 40A, § 6, par. 4, apply only to vacant land. *Ibid.* The inspector reported at the hearing before the zoning board of appeals that whether the garage lot was considered vacant for purposes of applying c. 40A, § 6, or the local ordinance § 30-15(c)(3)(b) was never part of the city's interpretation. Because of the result we reach, we need not definitively resolve this issue.

The question we must decide is which lot must be improved with a dwelling in order to qualify for the exemption; that is, whether the term "such lot" as used in § 30-15(c)(3)(b) refers to the lot for which a building permit is sought, i.e., "the lot at issue," or the "adjacent lot." The Land Court judge concluded that the phrase "such lot" refers to its immediate antecedent, "the lot in question." The result is that when two adjacent undersized lots are held in common ownership, the lot improved with a dwelling is protected from increases in the area, frontage, or setback requirements.

"[T]he 'rule of the last antecedent' holds that, unless there is something in the subject matter, dominant purpose, or language of the statute that requires a different interpretation, qualifying phrases are to be applied to the words or phrase immediately preceding and are not to be construed as extending to others more remote." *Herrick* v. *Essex Regional Retirement Bd.*, 77 Mass. App. Ct. 645, 650 (2010) (quotation and citation omitted). Applying this rule to the ordinance, we agree with the Land Court judge that "such lot" refers only to its immediate antecedent, "the lot in question," or the garage lot. In order to be exempt from the increases in dimensional requirements, therefore, the lot at issue must be improved with a single- or two-family dwelling. The garage lot is not so improved and does not qualify for the exemption.

We are mindful that "a judge must give 'substantial deference' to a board's [reasonable] interpretation of its zoning bylaws and ordinances." *Wendy's Old Fashioned Hamburgers of New York, Inc.* v. *Board of Appeal of Billerica*, 454 Mass. 374, 381 (2009). Incorrect interpretations, however, are not entitled to deference. *Shirley Wayside Ltd. Partnership* v. *Board of Appeals of Shirley*, 461 Mass. 469, 475 (2012). We think it unreasonable to interpret the plain language of the ordinance as affording protection to the garage lot.

We consider next whether the grammatically correct interpretation results in an illogical or unreasonable interpretation. The Chanskys contended below that it is illogical to provide merger protection for a lot that is already improved with a residential structure as it would already be protected as a prior nonconforming use. The only lot requiring protection, they argued, was the

"vacant" garage lot. At first blush, the Chanskys' contention would seem to have some force. A memorandum from an associate city solicitor to the board of aldermen on July 6, 2001, discussing the proposed amendments to § 30-15(c) (see note 4, *supra*) indicates that lots improved with single-family and two-family dwellings were losing their grandfather protection and were being deemed uninhabitable under the terms of § 30-26[7] of the ordinance in the event they came into common ownership and merged with an adjacent lot. This result was deemed "extremely harsh" and the proposed amendment addressed the issue by providing that "a lot held in common ownership after 1995 would not lose their 'old' lot protections if the lot is already improved with a single or two family house."[8] In light of the potential impacts of § 30-26, there is nothing illogical in the result reached by the judge. Given the grammatically correct interpretation of the ordinance as confirmed by the legislative history, we have little difficulty affirming the judge's decision. See *Commonwealth* v. *Roucoulet*, 413 Mass. 647, 651 n.7 (1992) (even where a statute is unambiguous, legislative history can confirm an interpretation).

The defendants and one of the amici contend that the judge's decision will create great havoc in the city as residents long have been relying on the buildable status of lots such as the

---

[7] Section 30-26(a) of the zoning ordinance provides:

"Except to the extent that this section provides otherwise, whenever a lot upon which stands a building or structure erected after the passage of this chapter or of any corresponding provision of any prior ordinance is changed in size or shape so that the lot, building or structure no longer complies with the provisions of section 30-15 [area, frontage, and setback requirements], such building or structure shall not thereafter be used until it is altered, reconstructed or relocated so as to comply with the provisions of section 30-15. For purposes of this section, the size or shape of a lot shall be deemed to have been changed only if the lot was combined, merged, subdivided, or resubdivided by recording a deed, plan or certificate of title . . . ."

[8] The Chanskys argue it was error for the judge to rely on the affidavit of George E. Mansfield, an alderman when 2001 changes to § 30-15(c) were adopted. Even if it were error not to strike the Mansfield affidavit, see *Keane* v. *City Auditor of Boston*, 380 Mass. 201, 207 n.5 (1980), the affidavit is largely duplicative of the memorandum, and any error was harmless. See *Mason* v. *Coleman*, 447 Mass. 177, 188 (2006).

garage lot. The concept of merger of undersized, adjacent, nonconforming lots, however, long preceded the Chanskys' purchase of their lots. *Preston, supra* at 238. In addition, although the parties have not provided us with certified copies of the prior versions of the ordinance, there is some suggestion in the portions that are contained in the record that the lots at issue, both combined in use to serve a single-family dwelling, may have merged as far back as 1940 when minimum frontage and lot area restrictions first were adopted.[9] Finally, to the extent the city intended broader protection for lots such as the garage lot, it is free to enact language which clearly reflects that intent. The judgment of the Land Court is affirmed.

*So ordered.*

---

[9]That the garage lot had been assessed significantly lower than the house lot is an indication that the garage lot for some time had been considered by city officials to be unbuildable.